

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-31-1995

# Public Interest v Hercules

Precedential or Non-Precedential:

Docket 93-5720

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Public Interest v Hercules" (1995). *1995 Decisions.* Paper 90.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/90

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 93-5720 and 93-5721


PUBLIC INTEREST RESEARCH GROUP OF NEW JERSEY, INC.,
FRIENDS OF THE EARTH

Appellants in No. 93-5721

v.

HERCULES, INC.

Appellant in No. 93-5720


On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 89-cv-02291)


Argued: July 11, 1994

Before: SLOVITER, Chief Judge, ROTH, Circuit Judge,
and POLLAK, District Judge[1]

(Opinion Filed  March 31, 1995)


Carolyn S. Pravlik, Esquire
Bruce J. Terris, Esquire (Argued)
Terris, Pravlik & Wagner
1121 12th Street, N.W.
Washington, D.C. 20005-4632
    Attorneys for Appellants in No. 93-5721

---

    1Honorable Louis H. Pollak, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

Joel Schneider, Esquire (Argued)
Manta & Welge
2005 Market Street
One Commerce Square, 37th Floor
Philadelphia, PA 19103
    Attorney for Appellant in No. 93-5720

David A. Nicholas, Esquire
Charles C. Caldart, Esquire
National Environmental Law Center
29 Temple Place
Boston, MA
    Attorneys for California Public Interest Research Group,
    Massachusetts Public Interest Research Group, Public
    Interest Research Group of Michigan, Illinois Public
    Interest Research Group, Ohio Public Interest Research
    Group and Washington Public Interest Research Group,
    Amicus Curiae in No. 93-5721

Marianne Dugan, Esquire
Michael Axline, Esquire
Western Environmental Law Center, Inc.
44 West Broadway, Suite 200
Eugene, OR 97402

Mark Van Putten, Esquire
National Wildlife Federation
Great Lakes Natural Resource Center
506 E. Liberty, Second Floor
Ann Arbor, MI 48104-2210

Charles M. Tebbutt, Esquire
Allen, Lippes & Shonn
1260 Delaware Avenue
Buffalo, NY 14209-2498

Daniel Cooper, Esquire
San Francisco Baykeeper
468 Duboce
San Francisco, CA 94117
    Attorneys for Atlantic States Legal Foundation,
    San Francisco Baykeeper, and National Wildlife Federation,
Amicus Curiae in No. 93-5721

Lois J. Schiffer
Acting Assistant Attorney General
Ellen J.Durkee, Esquire
Evelyn S. Ying, Esquire
Department of Justice Environment

& Natural Resources Division
Washington, D.C. 20530
      Attorneys for the United States as Amicus Curiae


                    OPINION OF THE COURT



ROTH, Circuit Judge:


        Plaintiffs, Public Interest Research Group of New

Jersey, Inc., (NJPIRG) and Friends of the Earth, Inc., (FOE)

brought a citizen suit pursuant to the Federal Water Pollution

Control Act (Clean Water Act or Act), 86 Stat. 816, 33 U.S.C. §

1251 et seq., against defendant Hercules, Inc.  Pursuant to the

Act, plaintiffs notified Hercules, the United States

Environmental Protection Agency (EPA), and the New Jersey

Department of Environmental Protection and Energy (NJDEPE) that

they intended to sue Hercules for alleged violations of its

federal and state permits, limiting effluent discharge from its

Gibbstown, New Jersey, facility.

        Plaintiffs' notice letter claimed that Hercules

committed sixty-eight discharge violations from April 1985

through February 1989.  A discharge violation involves the

release of a pollutant into receiving waters, which release

exceeds the quantity, discharge rate, or concentration of the

pollutant allowed by the permit.  In accord with the citizen suit

provision of the Act, plaintiffs waited 60 days and then filed a

complaint in federal district court, alleging that Hercules had violated its permit. Plaintiffs attached to the complaint a list of eighty-seven discharge violations. This list omitted several of the originally cited violations and included more than thirty new ones. A majority of the new violations pre-dated the 60-day notice letter; the remainder post-dated it.

Between the time plaintiffs filed their complaint and moved for summary judgment, they supplemented the list of alleged permit violations, committed by Hercules, to include a total of 114 discharge violations, 328 monitoring violations, 58 reporting violations, and 228 recordkeeping violations. At no time prior to plaintiffs' motion for summary judgment did plaintiffs supply Hercules, EPA, or the State of New Jersey (State) with a new notice letter pursuant to the Act. Hercules filed a cross-motion for summary judgment, seeking to dismiss all violations not listed in plaintiffs' notice letter. The violations Hercules sought to dismiss included a majority of the discharge violations and all of the monitoring, reporting and recordkeeping violations.

The district court granted summary judgment for Hercules as to all pre-complaint discharge violations not listed in the notice letter and as to all monitoring, reporting and recordkeeping violations. The court granted summary judgment for plaintiffs as to forty-three discharge violations listed in the notice letter and included in the complaint and as to seventeen

post-complaint discharge violations of the same type as those included in the notice letter.

Both parties sought interlocutory review of the district court's decision to grant summary judgment on certain claims and to dismiss others; review was granted. For the reasons stated below, we will affirm the decision of the district court in part, we will reverse it in part, and we will remand this case for further proceedings consistent with this opinion.

I.

The Clean Water Act makes it unlawful to discharge any pollutant into the nation's waters except those discharges made in compliance with the Act. 33 U.S.C. § 1311. In 1975, the federal government issued a National Pollutant Discharge Elimination System (NPDES) permit to Hercules. 33 U.S.C. § 1342. This permit authorized Hercules to discharge certain pollutants from its Gibbstown facility into the Delaware River (outfall 001) and into Clonmell Creek (outfall 002) in strict compliance with conditions specified in the permit. In addition to establishing limits on effluent discharges, the permit required Hercules to monitor its effluent and to submit reports of the results. 33 U.S.C. § 1342(a)(2). The Act requires that such reports, known as Discharge Monitoring Reports (DMRs), be made available to the public. 33 U.S.C. § 1318(b); 40 C.F.R. § 122.41 (j), (l).

The Clean Water Act allows each state to establish and administer its own permit program, provided that the program

meets the requirements established under the Act and is approved by the EPA.  33 U.S.C. § 1342(b).  In 1982, the EPA authorized New Jersey to administer a state permit program.  After assuming this responsibility, NJDEPE issued a modified Pollutant Discharge Elimination System permit to Hercules for the Gibbstown facility (NJPDES Permit No. NJ 0005134).  This permit established monitoring and reporting requirements similar to those of Hercules' NPDES permit.  40 C.F.R. § 123.25.  Under both federal and state law, Hercules was required to make its DMRs available to the public.

The NJPDES permit established the same two outfalls: outfall 001 into the Delaware River and outfall 002 into Clonmell Creek.  The permit established discharge limits and monitoring requirements for designated parameters at each outfall, with each parameter defined as a particular attribute of a discharge. Parameters under the Hercules permit included specific pollutants (such as fecal coliform) and discharge characteristics or water quality indicators (such as the color or pH value of the sample or the biochemical oxygen content).  The permit established strict limits on these parameters, both as to the overall amount of the pollutant and as to the concentration of the pollutant or water quality.

The Clean Water Act provides that federal or state authorities may take enforcement action against a permit holder who fails to comply with specified permit conditions.  33 U.S.C.

§§ 1319 and 1342(b)(7).  In addition, the Act provides that private citizens may commence civil actions in certain situations against a permit holder who fails to comply with the Act.  33 U.S.C. § 1365.  If the citizen prevails, the court may order injunctive relief and/or impose civil penalties which are payable to the United States.

Following a review of Hercules' DMRs on file with the federal government, NJPIRG notified Hercules, EPA, and the State of its intent to file suit under the citizen suit provision of the Act for Hercules' alleged violation of its permits.[2] Plaintiffs' March 21, 1989, notice letter listed sixty-eight discharges which plaintiffs claimed had occurred from April 1985 through February 1989 in violation of Hercules' permits.[3]

---

[2] Plaintiff FOE joined in NJPIRG's March 21, 1989, notice letter on March 29, 1989.

[3] Plaintiffs' letter, which was addressed to Hercules' plant manager, EPA and the State, stated as follows:

Section 505(b) of the Federal Water Pollution Control Act, 33 U.S.C. § 1365(b), requires that 60 days prior to the filing of a citizen suit in federal district court under section 505(a) of the Act, the alleged violator, the U.S. Environmental Protection Agency, and the State in which the alleged violations occur must be given notice of the alleged violations.

The Public Interest Research Group of New Jersey, Inc., 84 Paterson Street, New Brunswick, NJ 08901 [phone number] hereby places you on notice, pursuant to Section 505(b) of the Act, 33 U.S.C. §1365(b), that it believes that your facility in Gibbstown, New Jersey, has violated and continues to violate "an effluent standard or limitation" under Section 505(a)(1)(A) of the Act, 33 U.S.C. §1365(a)(1)(A), by failing to comply with NPDES/NJPDES permit number NJ 0005134 in at least the instances

Plaintiffs' notice letter alleged that Hercules violated its permit for the parameters of biological oxygen demand, total residual chlorine, chemical oxygen demand, total suspended solids, phenol, fecal coliform, and bioassay at outfall 001 and the parameters of pH, phenol, chemical oxygen demand, and total suspended solids at outfall 002. The notice letter listed permit violations only in the discharge of a particular pollutant; it did not list any violations for the monitoring required to track that pollutant or for the reporting or recordkeeping which documented the monitoring. It is the discharge violations, however, which are most easily

enumerated in the attached chronological list of permit violations.

The attached list is based on available permit records on file at the offices of EPA Region 2 in New York City. In some instances, information was missing from the public files. We therefore expect to request information from your records to bridge these data gaps and to supplement the list of violations based on that information. However, we do not believe that it is necessary to provide you with additional notice concerning any supplemental violations before filing a judicial enforcement action.

We intend, at the close of the 60-day notice period or shortly thereafter, to file a citizen suit under Section 505(a) of the Act against your company for the violations at the Gibbstown facility.

During the 60-day notice period, we would be willing to discuss a settlement of the claims in this letter. However, if you wish to pursue such negotiations in the absence of litigation, we suggest that you initiate those discussions within the next 10 days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

ascertainable from the information available to the public, i.e., the DMRs which Hercules must file.

Plaintiffs filed a citizen suit in federal district court on May 24, 1989, shortly after the 60-day notice period had expired. The complaint alleged eighty-seven discharge violations which had occurred from April 1985 through March 1989. Among these were more than thirty new violations which had not been included in the notice letter; a majority of the new violations pre-dated the notice letter, the remainder post-dated it.

Between the time of the 60-day notice letter on March 21, 1989, and the plaintiffs' final submission for purposes of summary judgment on September 14, 1992, plaintiffs made numerous modifications of their list of alleged violations through "informal" amendments to their complaint. Plaintiffs added discharge violations and for the first time alleged monitoring, reporting and recordkeeping violations.[4] The majority of

---

[4] According to the record before us, plaintiffs provided the district court with the following documentation of violations: (1) 60-day notice letter, March 21, 1989 (listing 68 discharge violations); (2) Complaint filed with district court, May 24, 1989 (listing 87 discharge violations and referencing three apparent monitoring violations); (3) Plaintiffs' second set of interrogatories, July 3, 1990 (listing 104 discharge violations); (4) Plaintiffs' response to second set of documents requests, January 15, 1991 (listing 110 discharge violations, 31 monitoring violations, 17 reporting violations); (5) Plaintiffs' brief in support of motion for summary judgment, February 15, 1991 (listing 130 discharge violations, 406 monitoring violations, 12 reporting violations); (6) Plaintiffs' reply brief in support of motion for summary judgment, May 30, 1991 (listing 120 discharge violations, 352 monitoring violations, 58 reporting violations); (7) Plaintiffs' letter to district court clarifying for court

monitoring violations were instances when Hercules did not analyze samples before the time limit specified in the permit for holding samples had expired. Reporting violations consisted of instances when Hercules erroneously reported the kind of sample that was taken or when Hercules failed to report a discharge violation. Recordkeeping violations involved paperwork and clerical errors. Plaintiffs' final submission to the district court alleged that Hercules had committed 114 discharge violations, 328 monitoring violations, 58 reporting violations, and 228 recordkeeping violations.[5] Plaintiffs did not send a new 60-day letter, giving notice of these additional violations, nor did plaintiffs formally amend their complaint to include them.[6]

---

alleged violations for purposes of summary judgment, September 14, 1992 (listing 114 discharge violations, 328 monitoring violations, 58 reporting violations, 228 recordkeeping violations).

[5] Of the 114 discharge violations included in plaintiffs' final list, 61 were not included in the original notice. A substantial majority of the newly listed violations, 57 of the 61, involved the same parameter at the same outfall as the violations included in the notice letter but occurred on different dates. Of the other four, one involved the same parameter (pH) but a different outfall, and the remaining three involved new parameters (color and total dissolved solids) (items 48, 60, 79, and 112 on the plaintiffs' final list).

[6] On April 7, 1993, subsequent to the district court's March 31, 1993, ruling, plaintiffs filed a new 60-day notice letter citing the alleged monitoring, reporting and recordkeeping violations dismissed by the court. On June 11, 1993, plaintiffs filed a new complaint in district court which included the violations listed in the new notice letter. On July 2, 1993, plaintiffs filed another 60-day notice letter citing many of the discharge violations dismissed by the court. This letter stated that at the end of 60 days, plaintiffs intended to file a motion

Following receipt of the plaintiffs' original 60-day notice letter, but prior to the district court's decision in this matter, Hercules received a Notice of Civil Penalty Assessment from the State for violations of its permit. In March 1991, Hercules and the State executed an Administrative Consent Order (ACO) under which Hercules agreed to pay the State $600,000 as a penalty for 115 discharge violations of its permit which had occurred between March 1985 and August 1990. All but two of the discharge violations addressed in the ACO were included among the discharge violations alleged by the plaintiffs in their final submission to the district court. In other words, of the 115 discharge violations which served as the basis for the imposition of the $600,000 penalty by the State, 113 were included in the plaintiffs' final submission to the district court.[7]

## A. District Court Opinion

Plaintiffs moved for partial summary judgment as to liability and for permanent injunctive relief, enjoining Hercules from future violations of the Clean Water Act. Hercules filed a

with the district court to amend their original complaint to include these alleged discharge violations.

[7] In addition to asserting in district court that plaintiffs' notice letter failed to comply with the law, Hercules argued that as a matter of equity the district court should not impose fines for those discharge violations which were the subject of the State penalty and, in the alternative, that as a matter of law the fine already paid by Hercules was an adequate remedy. The district court rejected these arguments. These questions are not included as a part of the interlocutory appeal and we will not address them.

cross-motion for summary judgment, asserting that plaintiffs had failed to comply with the 60-day notice provision of the Act.

The district court examined the plaintiffs' 60-day notice letter and compared it to the final list of alleged violations submitted by plaintiffs.  Finding that the notice letter did not notify Hercules, the EPA, or the State of plaintiffs' intent to sue for monitoring, reporting and recordkeeping violations, the district court granted summary judgment for Hercules on all of these violations.  830 F. Supp. 1525, 1534 (D.N.J. 1993) ("In sum, there has never been a statutory notice letter in this case that alleged a specific monitoring, reporting, or recordkeeping violation, so all of the alleged monitoring, reporting, and recordkeeping violations must be dismissed.").

The district court then placed the discharge violations into three categories:  (1) discharge violations included in both the notice letter and the final list; (2) pre-complaint discharge violations not included in the notice letter but included in the final list; and (3) post-complaint discharge violations included in the final list.[8]  Finding that plaintiffs had complied with the Act's notice requirement for the violations in category one, the district court denied Hercules' summary judgment motion

---

[8]  Of the 114 alleged discharge violations, 53 were in category one, 44 were in category two, and 17 were in category three.

regarding them. As for the violations in category two, the court granted Hercules' summary judgment motion, holding that plaintiffs had failed to comply with the Act's notice requirement. Id. at 1534 ("those violations which in fact occurred before the complaint was filed on May 24, 1989 cannot be sued upon unless first noticed in compliance with 33 U.S.C. § 1365 and the accompanying regulations codified at 40 C.F.R. § 135.3"). With regard to category three, the court found no statutory requirement that defendants first be notified by plaintiffs of their intent to sue. It, therefore, granted summary judgment for plaintiffs on these violations.

In support of its decision to distinguish between category two violations and category three violations, the district court, citing Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49 (1987), wrote that: "[S]ubsequently occurring violations not noticed in a citizen's 60-day notice letter were specifically contemplated -- indeed required -- by the Supreme Court as a prerequisite to a district court's jurisdiction over a citizen suit under the Clean Water Act." 830 F. Supp. at 1534. The court held that such post-complaint violations, being "the 'type of activity' (e.g., discharging pollutants in excess of permit limitations) as have been alleged in the notice letter[,]" survived defendant's summary judgment motion. Id. After reviewing the evidence on violations in categories one and three, a total of 70 violations,

the court granted summary judgment (with respect to liability only) in favor of plaintiffs on 60 of these.[9]

In sum, the district court held that, under the Act's notice requirement, the plaintiffs could sue only for those discharge violations that were included in their notice letter or that occurred after the complaint was filed and were a continuation of the same type of violation as contained in the notice letter. The only issue remaining for trial would then be a determination of the size of the penalty for the established discharge violations.

## B. District Court Order on Interlocutory Appeal

Following the district court's order granting in part and denying in part the parties' motions for summary judgment, plaintiffs sought entry of final judgment under Fed. R. Civ. Pro. 54(b) as to those claims dismissed by the court. 830 F. Supp. 1549, 1553 (D.N.J. 1993). In the alternative, plaintiffs sought

---

[9] Of the total 114 discharge violations: Summary judgment was granted in favor of plaintiffs on 60; 44 were dismissed on the basis that no notice was provided by plaintiff; four were dismissed on the basis that Hercules had established an "upset" defense; and six were left for later judgment. Subsequent to the district court's ruling, the parties entered into a stipulation which permanently disposed of the latter 10 discharge violations. 830 F. Supp. 1549, 1552 n.4.

Of the 60 violations on which summary judgment was granted for plaintiffs, 43 were included in the 60-day notice letter, and 17 occurred after the complaint was filed. Of the 44 violations that were dismissed due to lack of notice, 23 occurred before the 60-day notice letter was filed, and 21 occurred after the notice was filed.

certification, for purposes of an interlocutory appeal, of the court's interpretation of the Act's 60-day notice requirement. 28 U.S.C. § 1292(b) (establishing a district court's authority to certify a controlling question of law for interlocutory appeal).

Defendants filed a cross-motion, seeking certification under § 1292(b) on the question of whether the district court erred in failing to dismiss the post-complaint discharge violations. After considering and rejecting plaintiffs' motion for final judgment as to the dismissed violations, the court granted plaintiffs' motion and defendant's cross-motion for certification of a question of law for interlocutory appeal. The court certified the question of law as:

> Whether this court correctly decided, pursuant to section 505(b)(1) of the Clean Water Act, as amended, 33 U.S.C. § 1365(b)(1) and the accompanying regulations at 40 C.F.R. § 135.3, that where plaintiffs have given notice of intent to sue for various discharge violations but no other type of violation (i.e., monitoring, reporting or recordkeeping) this court's subject matter jurisdiction includes the noticed violations and any post-complaint continuing violations of the same type as those for which notice was given, but not unnoticed pre-complaint violations, nor post-complaint violations of a different type from those for which notice was given.

Id. at 1560.

II.

The district court had jurisdiction over this citizen suit pursuant to 33 U.S.C. § 1365. Following the district court's order certifying a question of law for interlocutory appeal, we granted both parties permission to appeal pursuant to 28 U.S.C. § 1292(b). Our review is limited to the question of law raised in the district court's order, Dailey v. National Hockey League, 987 F.2d 172, 175 (3d Cir.), cert. denied, 114 S. Ct. 67 (1993), and our review is plenary. Louis W. Epstein Family Partnership v. KMart Corp., 13 F.3d 762, 766 (3d Cir. 1994).

### III.

The Clean Water Act authorizes a citizen (defined as a person or persons having an interest which is or may be adversely affected) to bring suit in federal court against any person who is alleged to be in violation of "an effluent standard or limitation" as defined in the Act or "an order issued by the [EPA] Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1). In order to commence a suit, a citizen must comply with § 1365(b), which states in part:

> No action may be commenced –
>
> > (1) under subsection (a)(1) of this section –
> >
> > > (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator

of the standard, limitation, or
order.

33 U.S.C. § 1365(b).

In crafting the citizen suit provision, Congress sought to "strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits."  Hallstrom v. Tillamook County, 493 U.S. 20, 29 (1989) (analyzing the legislative history of the citizen suit provision of the Clean Air Amendments of 1970, which served as the precursor to analogous citizen suit provisions in the Clean Water Act and the Resource Conservation and Recovery Act of 1976).  The Supreme Court stated in Hallstrom:

> Requiring citizens to comply with the notice and delay requirements serves this congressional goal in two ways.  First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits.  See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 60 (1987) ("The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action").  In many cases, an agency may be able to compel compliance through administrative action, thus eliminating the need for any access to the courts.  Second, notice gives the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." Gwaltney, supra, at 60.

Id. (citation omitted). Either of these resolutions, as cited in Hallstrom, whether by agency action compelling compliance or by self-compliance on the part of the violator, will halt the discharge of the pollutant -- the ultimate purpose of the Act. If the violation continues, however, the citizen suit will be the vehicle to achieve compliance.

With that purpose in mind for citizen suits, Congress then delegated to the EPA the task of determining the form of the notice letter. Subsection 1365(b) provides that "[n]otice under this subsection shall be given in such manner as the [EPA] Administrator shall prescribe by regulation." The legislative history indicates that Congress sought here to strike a balance between providing notice recipients with sufficient information to identify the basis of the citizen's claim and not placing an undue burden on the citizen.

> [S]uch regulations should reflect simplicity, clarity, and standardized form. The regulations should not require notice that places impossible or unnecessary burdens on citizens but rather should be confined to requiring information necessary to give a clear indication of the citizens' intent. These regulations might require information regarding the identity and location of the alleged polluter, a brief description of the activity alleged to be in violation, and the provision of law alleged to be violated.

S. Rep. No. 92-414 at 80 (1971), 92d Cong. 1st Sess., <u>reprinted</u>
<u>in</u> 2 Legislative History of the Water Pollution Control Act
Amendments of 1972 at 1498 (1973) (hereinafter Leg. Hist.).[10]

Pursuant to the statutory directions, EPA drafted a
regulation, 40 C.F.R. § 135.3(a), which prescribed the contents
of a notice letter:

> <u>Violation of standard, limitation or order.</u>
> Notice regarding an alleged violation of an
> effluent standard or limitation or of an
> order with respect thereto, shall include
> sufficient information to permit the
> recipient to identify the specific standard,
> limitation, or order alleged to have been
> violated, the activity alleged to constitute
> a violation, the person or persons
> responsible for the alleged violation, the
> location of the alleged violation, the date
> or dates of such violation, and the full
> name, address, and telephone number of the
> person giving notice.

---

[10] The House Report accompanying the Clean Water Act
amendments noted that the regulations promulgated by the EPA
Administrator:

> should be issued as soon as possible after
> enactment of this legislation and, although
> not placing unnecessary or impossible burdens
> on complainants, should require information
> regarding the identity and location of the
> alleged polluter, a brief description of the
> activity alleged to be in violation, [and]
> the provision of law alleged to be violated.

H. R. Rep. No. 92-911 at 133 (1972), 92d Cong. 2d Sess.,
<u>reprinted in</u> 1 Leg. Hist. at 820.

In the present dispute, Hercules does not contend that plaintiffs failed to send a 60-day notice letter. Rather, Hercules asserts that plaintiffs' 60-day notice letter lacked the specificity, required by the Act and its regulation, to put the recipients of the letter on notice of the violations upon which plaintiffs intended to sue. The district court agreed, holding that plaintiffs' 60-day notice letter failed to satisfy the "more specific, detailed requirements" of the regulation. 830 F. Supp. at 1532. In making this assessment, the court stated, in the words of the regulation, that except for the sixty-eight discharge violations, plaintiffs'

> notice letter fails to "identify the <u>specific</u> standard, limitation or order alleged to have been violated" -- which means the permit requirement which has been violated. The notice letter fails to identify "the activity alleged to constitute a violation" -- such as failure to test or report or keep adequate records, for example. The notice letter was also deficient as to unlisted violations by not giving the "date or dates of such violation," all as required in 40 C.F.R. § 135.3(a). Each of these provisions is a component of statutory "notice of the alleged violation" as a prerequisite to suit under § [1365](b)(1) of the Act.

<u>Id.</u> The district court went on to find that the notice letter was also deficient under the language of the statute:

> That each of the violations alleged in the Complaint must have been stated in the sixty-day notice letter likewise is compelled by the statute's plain language, because § [1365(b)(1)] requires not just notice of an

> alleged violation, but "notice of the
> violation." (Emphasis added.)  Congress could
> not have chosen clearer language to express
> the requirement that the Complaint will be
> limited to the violations listed in the
> sixty-day notice letter.

Id.

We disagree with the district court's reading of both the statute and the regulation.  Under the district court's construction, the burden is placed on the citizen to identify not only the specific standard, limitation, or order alleged to have been violated but also the "activity," i.e., any aspect of tracking and recording a pollutant discharge that may constitute a violation.  The district court also placed the burden on the citizen to identify every pre-complaint date on which there was an excess discharge of a designated pollutant.

While there is no doubt that such detailed information is helpful to the recipient of a notice letter in identifying the basis for the citizen suit, such specificity is not mandated by the regulation.  The regulation does not require that the citizen identify every detail of a violation.  Rather, it states that "[n]otice regarding an alleged violation . . . shall include sufficient information to permit the recipient to identify" the components of an alleged violation.  40 C.F.R. § 135.3(a) (emphasis added).

We read the regulation to require just what it says: that the citizen provide enough information to enable the

recipient, i.e., Hercules, EPA and/or the State, to identify the specific effluent discharge limitation which has been violated, including the parameter violated, the date of the violation, the outfall at which it occurred, and the person or persons involved.

In this regard, because a permit violation occurs through an excess discharge of a pollutant into the water and because compliance with a permit limitation is tracked through monitoring, reporting and recordkeeping, we conclude that a monitoring, reporting and recordkeeping violation, which is an aspect of the permit requirement involved in a noticed discharge violation, should be an element of that same overall episode. Once the discharge violation is noticed, any subsequently discovered monitoring, reporting or recordkeeping violation that is directly related to the discharge violation may be included in the citizen suit.

A general notice letter that fails sufficiently to inform its recipients of the violations upon which a citizen intends to bring suit will not conform to the Act's requirement. However, the citizen is not required to list every specific aspect or detail of every alleged violation. Nor is the citizen required to describe every ramification of a violation. If an excessive discharge is noticed and it is later discovered that monitoring for that parameter at that outfall on that day was also faulty, we conclude, pursuant to the language of the regulation, that sufficient notice has been given of the

monitoring violation to include it in the suit. Similarly, if a violation of monitoring for a specific parameter is noticed and it is later discovered that a discharge violation of that parameter also occurred at that outfall on that day, we find that sufficient notice has been given of the discharge violation to include it in the suit. We come to this determination because, in investigating one aspect of a parameter violation, such as a discharge, the other aspects of that violation, for instance monitoring, reporting, and recordkeeping requirements for that parameter, will of necessity come under scrutiny. We find that notice of one facet of an effluent infraction is sufficient to permit the recipient of the notice to identify other violations arising from the same episode.

Moreover, unlike the district court, we do not read § 1365 to compel a finding that a citizen must give notice to recipients of each individual violation of a specific discharge limitation. For example, if a permit holder has discharged pollutant "x" in excess of the permitted effluent limit five times in a month but the citizen has learned only of four violations, the citizen will give notice of the four violations of which the citizen then has knowledge but should be able to include the fifth violation in the suit when it is discovered. Whether the agency or the permit holder is informed of four or five excess discharges of pollutant "x" will probably make no difference in a decision to bring about compliance. If the

agency or the permit holder decides, however, not to comply, there seems to be nothing gained by requiring the citizen to file a new notice letter in order to include a fifth violation in the suit.  A literal reading of the statute requires that the citizen identify discharges in excess of the effluent limit, but not necessarily each individual excess.

Hercules contends, however, that notice of each individual violation is necessary in order for the recipients of the notice to evaluate the extent of the citizen's claim. Hercules suggests, for example, that whereas the EPA or the State might not pursue an enforcement action against an alleged violator with a small number of individual violations, the government would be more likely to act if each individual violation were included in the notice.  Similarly, the larger the number of cited violations, the greater incentive for the permit holder to try to comply.

Hercules' argument ignores the fact that both the federal and state government enforcement agencies have access to the DMRs.  Both the Clean Water Act and the New Jersey permit program require that a permittee file DMRs with the EPA and the NJDEPE.  The DMRs filed by Hercules list the discharge violations.  Once a notice letter from a citizen has been received, the EPA and the State can, with relative ease, check for other discharge violations of the same type.  Moreover, as the author of the DMRs, Hercules is surely on notice of the

contents of the reports and of the frequency of similar violations.

The district court and Hercules also place great reliance on Hallstrom for their interpretation of the statute and regulation. The Supreme Court held in Hallstrom that "the notice and 60-day delay requirements are mandatory conditions precedent to commencing suit under the RCRA [Resource Conservation and Recovery Act of 1976] citizen suit provision; a district court may not disregard these requirements at its discretion." 493 U.S. at 31. Hercules and the district court would have us read Hallstrom broadly, extending the Supreme Court's interpretation of the notice and 60-day delay requirements to a ruling on the contents of a notice.

We decline to apply Hallstrom so broadly. The Supreme Court's focus in Hallstrom was on the timing of the notice, not on its contents. First, while the literal reading of the statute clearly compels the Court's interpretation of the 60-day delay requirement, there is no express requirement in the statute pertaining to the content of a notice letter. In fact, as we have noted, Congress delegated to the EPA the authority to determine the necessary contents of a notice letter.

Second, the Court in Hallstrom saw no need even to refer to the regulation. The dispute there involved whether notice and delay were preconditions to suit, not whether the extent of the notice was adequate. See also Dague v. City of

Burlington, 935 F.2d 1343, 1352 (2d Cir. 1991) ("the city argues that the plaintiffs' notice did not comply with the content requirements of the statutory and regulatory notice provisions, thus mandating dismissal under Hallstrom.  In the first place, Hallstrom did not address such technical criteria"), rev'd, in part, on other grounds, 112 S. Ct. 2638 (1992).

This conclusion does not mean, however, that Hallstrom is not helpful in our analysis of the notice requirement.  In deciding whether the plaintiffs here complied with the content requirements established under the regulation, we must consider whether their notice letter served the purpose that Congress intended:  To provide the recipient with effective, as well as timely, notice.  Hallstrom's analysis of Congress' intent in crafting the citizen suit provision, see supra page [typescript 17-18], makes clear that not only is the 60-day notice before filing suit "a mandatory, not optional, condition precedent for suit," 493 U.S. at 26, but also that the content of the notice must be adequate for the recipients of the notice to identify the basis for the citizen's complaint.

The ultimate goal of a citizen suit is to bring the alleged violator into compliance with the nation's environmental laws.  This can be achieved through citizen enforcement efforts, government enforcement efforts, or self-enforcement efforts.  In this regard, the Senate Report noted:  "[t]he Committee intends the great volume of enforcement actions be brought by the State

[rather than the federal government]. . . . It should be noted that if the Federal, State, and local agencies fail to exercise their enforcement responsibility, the public is provided the right to seek vigorous enforcement action under the citizen suit provisions."  S. Rep. No. 92-414 at 64, 2 Leg. Hist. at 1482.

Moreover, we note the Supreme Court's statement in Gwaltney that "[t]he bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action." 484 U.S. at 60.  In deciding whether to initiate an enforcement action, the EPA and the state must be provided with enough information to enable them intelligently to decide whether to do so.  At the same time, the alleged violator must be provided with enough information to be able to bring itself into compliance. We will judge the sufficiency of the plaintiffs' 60-day notice letter in terms of whether it accomplishes these purposes.

IV.

Applying these legal precepts to the present dispute, we will analyze the violations in following order:  (A) pre-complaint discharge violations, (B) post-complaint discharge violations, and (C) monitoring, reporting and recordkeeping violations.[11]

---

[11] The district court's certification for this interlocutory appeal did not request review of its decision to grant summary judgment for plaintiffs as to those discharge violations included in the both the notice letter and plaintiffs' final list.  We

## A. Pre-Complaint Discharge Violations

The district court held that pre-complaint discharge violations not included in plaintiffs' notice letter cannot be included in the suit unless listed in a subsequent notice. For this reason, the district court granted defendant's summary judgment motion as to forty-four pre-complaint discharge violations.[12] We do not agree.

For the reasons stated in Part III, supra, we hold that a notice letter which includes a list of discharge violations, by parameter, provides sufficient information for the recipients of the notice to identify violations of the same type (same parameter, same outfall) occurring during and after the period covered by the notice letter.

The facts of this dispute support this holding. Less than two months after receiving the plaintiffs' 60-day notice letter, the State filed a Notice of Civil Penalty Assessment against Hercules for discharge violations of the permit. Although many of the sixty individual violations included in the State's initial list were exactly the same violation as included in the plaintiff's 60-day notice letter, there were several that were not on the plaintiffs' list. Some of these additional

---

do not therefore address this aspect of the district court's opinion.

[12] This includes 23 pre-notice discharge violations and 21 post-notice discharge violations.

violations occurred in months during which plaintiffs did not identify any discharge violation.  We infer from this comparison that the State examined Hercules' DMRs on file to achieve a more comprehensive list of discharge violations.  Almost two years later, in March 1991, Hercules and the State executed an ACO under which Hercules agreed to pay the State $600,000 as a penalty for 115 discharge violations of its permit.  The fact that the State's list of Hercules' discharge violations grew from 60 to 115 in the final ACO demonstrates that once the State received the citizen letter noting that Hercules was violating its permit, the State committed resources to monitoring Hercules' compliance and, in particular, to monitoring Hercules' compliance with the noticed parameters.

We hold, therefore, that the district court erred in granting Hercules' summary judgment motion as to the forty-four pre-complaint discharge violations not included in plaintiffs' notice letter.  We will remand this case to the district court to reinstate those alleged violations which are of the same type (same parameter, same outfall) as the alleged violations included in the plaintiffs' 60-day notice letter.[13]

B. Post-Complaint Discharge Violations

---

[13]The district court did not indicate why it grouped post-notice/pre-complaint violations with the pre-notice violations rather than with the post-complaint violations.  Under the rule we establish here, however, that distinction is not significant.

Finding that the post-complaint discharge violations included in the plaintiffs' list were a continuation of the type of activity alleged in the notice letter and finding no legal requirement that Hercules first be notified by plaintiffs of their intention to sue upon these violations, the district court held that these violations survived defendant's summary judgment motion.

For the most part, we agree with the district court. We hold that as long as a post-complaint discharge violation is of the same type as a violation included in the notice letter (same parameter, same outfall), no new 60-day notice letter is necessary to include these violations in the suit. In so holding, we do not in effect distinguish between pre-complaint violations and post-complaint violations.

Hercules disagrees, arguing that recipients of the notice letter may be more likely to act (i.e., the government may initiate enforcement action; the permit holder may attempt to remedy the violation) if a citizen is required to file a new notice for post-complaint violations. While it is true that the recipients may be more likely to take action as the number of violations increases, we do not find that this justifies a requirement that a new notice must be given for post-complaint violations before commencing a suit which will include these violations.

Rather, we find that the recipients of the notice are already on notice of violations of the same type, whether past or continuing. As recipients of the permittee's DMRs, the federal and state enforcement agencies have the ability to review the permittee's compliance. The federal and state enforcement agencies are on notice of continuing or intermittent violations of the same type because they are reported to them in the DMRs. Likewise, the permit holder is on notice of continuing or intermittent violations, given the fact that the permit holder is responsible for filing the DMRs.

The district court denied Hercules' summary judgment motion as to all seventeen post-complaint discharge violations. A review of these seventeen discharge violations reveals that all but one involved the same type of violations as those noticed in plaintiffs' 60-day notice letter. In other words, sixteen of the seventeen post-complaint discharge violations involved the same parameter and the same outfall as discharge violations included in the notice letter. We will affirm the district court's decision as to these sixteen post-complaint discharge violations. As for the seventeenth violation, item 112 on plaintiffs' final list, involving the parameter of total dissolved solids, we will remand this violation to the district court for a determination whether, under the standard outlined above, this violation was sufficiently related to the noticed violations for Hercules to be able to  identify it from the notice letter.

We have found implicit support for this conclusion regarding post-complaint violations in the Supreme Court's decision in Gwaltney.  There, the Court held that federal courts do not have jurisdiction over a citizen suit for "wholly past violations."  484 U.S. at 64.  Rather, jurisdiction exists "when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation."  Id.  In reaching this decision, the Supreme Court noted that "the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past." Id. at 59.

Gwaltney requires that for jurisdiction to attach, a citizen must make a good-faith allegation of a continuous or intermittent violation by the defendant at the time the complaint is filed.  Because a citizen must delay filing suit for at least 60 days after notice has been sent, it is foreseeable that a complaint will include allegations of more recent violations in an effort to establish "continuous or intermittent violations."

We recognize that the 60-day notice provision in the Act and the holding in Gwaltney represent "two separate jurisdictional requirements for bringing a citizen suit."  United States' Br. as Amicus Curiae at 17.  The Act requires that citizens provide a 60-day notice of intent to file suit. Gwaltney requires that a citizen's complaint contain a good-faith allegation of continuous or intermittent violation.  The dispute here involves the first jurisdictional prerequisite -- the

adequacy of the notice letter.  Nevertheless, the basis for the Supreme Court's decision in Gwaltney is helpful to our analysis. Continuing or intermittent violations of the same type are necessary to create jurisdiction of the citizen suit.  They are perforce related to the noticed violations.  For this reason, they should be easily identifiable by the notice recipient and, therefore, do not need to be noticed in a new 60-day letter.

C. Monitoring, Reporting and Recordkeeping Violations

Finding that the plaintiffs' 60-day notice letter did not notify Hercules, EPA, or the State of plaintiffs' intent to sue for alleged monitoring, reporting or recordkeeping violations, the district court granted Hercules' motion for summary judgment as to all of these alleged violations.  We will reverse this holding.  As we set out in Part III, supra, we conclude that, when a parameter violation has been noticed, subsequently discovered, directly related violations of discharge limitations or of monitoring, reporting, and recordkeeping requirements for that same parameter at that outfall for that same period may be included in the citizen suit.

Monitoring, reporting and recordkeeping requirements are conditions of a permit.  When plaintiffs noticed the discharge violations, an investigation by Hercules, EPA, or the State of those excess discharges should uncover related

violations of monitoring, reporting or recordkeeping involved in tracking those pollutant parameters.[14]

Support for our conclusion can be found in the legislative history of the citizen suit provision which makes clear that notice serves the important functions of allowing government agencies to take responsibility for enforcing environmental regulations and giving the alleged violator an opportunity to bring itself into complete compliance. The concept of "complete compliance" should consist of the cessation

---

[14]The close interrelationship of monitoring, reporting, and recordkeeping with discharge limitations has been also been noted by the Court of Appeals for the Fourth Circuit in Sierra Club v. Simkins Industry, Inc., 847 F.2d 1109, 1115 (4th Cir. 1988), cert. denied, 491 U.S. 904 (1992):

> [Defendant] was bound by the reporting and records retention requirements of the NPDES permit that are central to adequate administration and enforcement of limits on substantive discharges under the Clean Water Act. Unless a permit holder monitors as required by the permit, it will be difficult if not impossible for state and federal officials charged with enforcement of the Clean Water Act to know whether or not the permit holder is discharging effluents in excess of the permit's maximum levels.

of the offending discharge, with on-going discharges being monitored and recorded in accordance with the permit provisions. All these functions interact to ensure the permit holder's compliance with the permit conditions. The proper performance of each function is required under the permit provisions and a violation of any one may subject the permit holder to a penalty.

The burden on the citizen, however, is to provide sufficient information of a violation, such as an excessive discharge, so that the permit holder and the agency can identify it. If investigation of that discharge by the agency or the permit holder uncovers directly related monitoring, reporting, or recordkeeping violations, "complete compliance" should incorporate the correction of all such interconnected violations. If the agency or the permit holder fails to achieve "complete compliance," the citizen should be able in the citizen suit to seek "complete compliance," eliminating all directly related violations, without the burden of further notice. Correction of an excessive discharge without correction of faulty monitoring of that parameter is not complete compliance. Correction of faulty monitoring without correction of incomplete reporting of that parameter is not complete compliance.

If, however, we were to interpret the Act in the manner proposed by Hercules, with each of these functions, monitoring, reporting, and recordkeeping, being subject to separate notice prior to that violation being included in a suit, we might find

the permit holder claiming "complete compliance" when only one aspect of these interrelated violations had been corrected. We conclude that this latter result is not what Congress intended by "complete compliance."

We will reverse the district court's grant of summary judgment to Hercules on the monitoring, reporting, and recordkeeping violations, and we will remand that portion of the case to the district court to determine which of these violations are directly related to the discharge violations in suit and which are not. Those that are not directly related should be dismissed unless, in the interim, plaintiffs move to amend their complaint to include them in this action or move to consolidate this action with the subsequent action plaintiffs filed on June 11, 1993.[15]

V.

In sum, we will reverse the district court's decision to dismiss for lack of jurisdiction the forty-four pre-complaint discharge violations. On remand, the district court should reinstate those discharge violations which are of the same type

---

[15]As we note in footnote 6, on April 7, 1993, plaintiffs filed a new 60-day letter, citing the monitoring, reporting, and recordkeeping violations and filed a new complaint including them. Thus, no further notice need be given by plaintiffs before amending their original complaint to incorporate any of these violations -- or, if they prefer, moving to consolidate the two complaints.

(same parameter, same outfall, same time period) as the discharge violations included in the plaintiffs' 60-day notice letter.  We will affirm the district court's decision to deny defendant's summary judgment motion as to those post-complaint discharge violations involving the same parameter and same outfall as the discharge violations included in the notice letter.  Lastly, we will reverse the district court's decision to dismiss the monitoring, reporting and recordkeeping violations and remand consideration of these violations to the district court for further proceedings consistent with this opinion.