**PUBLIC INTEREST RESEARCH GROUP OF NEW JERSEY, INC., and Friends of the Earth, Plaintiffs,**

v.

**HERCULES, INC., Defendant.**

**PUBLIC INTEREST RESEARCH GROUP OF NEW JERSEY, INC., and Friends of the Earth, Plaintiffs,**

v.

**HERCULES, INC., Defendant.**

Civil Action Nos. 89–2291(JBS), 93–2381(JBS).

United States District Court, D. New Jersey.

Jan. 2, 1997.

Carolyn Smith Pravlik, Bruce J. Terris, Terris, Pravlik & Wagner, Washington, DC, for Plaintiffs.

Joel Schneider, Archer and Greiner P.C., Haddonfield, NJ, for Defendant.

## OPINION

SIMANDLE, District Judge.

Presently before the court is plaintiffs' motion for clarification of this court's November 4, 1996, Opinion and Order. That order sought to specify for trial purposes the level of deference to be given by the court to the New Jersey Department of Environmental Protection's (NJDEP's) prior determination of the appropriate penalties and remedial measures needed to redress Hercules' discharge violations. Because the court's order apparently caused some confusion over the scope of evidence that may be presented at trial, plaintiffs' motion for clarification is appropriate and will be granted.

### I. Background

The facts giving rise to this matter have been fully set forth in a number of opinions previously issued in connection with these consolidated cases. *PIRG v. Hercules, Inc.,* 830 F.Supp. 1525 (D.N.J.1993), *aff'd in part, rev'd in part,* 50 F.3d 1239 (3d Cir.1995); *id.,* Opinion and Order filed August 1996. The court will thus note only the facts and procedural history relevant to the pending motion.

This citizen suit was brought against Hercules under Section 505 of the Federal Water Pollution Control Act (the "Clean Water Act"), 33 U.S.C. § 1365. Plaintiffs allege numerous violations of a discharge permit issued to defendant pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342. All but one of the discharge violations at issue in this suit were also considered by the NJDEP in reaching a negotiated settlement with Hercules which resulted in the signing of an Administrative Consent Order ("ACO") in March of 1991. All discharge violations substantially ceased prior to the entry of the ACO, from 1991 to the present date. Hercules filed a *renewed motion for reconsideration* in March 1996, seeking a determination by this court that unless plaintiffs prove by a preponderance of the evidence that the amount of the NJDEP's penalty assessment was arbitrary, capricious, or contrary to law, then no additional penalties should be awarded plaintiffs at trial for the same violations addressed by the ACO. This court's November 4, 1996, Opinion and Order addresses defendant's request and specifies that the NJDEP's penalty assessment will be given substantial deference at trial. Further clarification of that order follows.

### II. Discussion

In assessing a penalty under the Clean Water Act, a district court has a great amount of discretion. *See Weinberger v. Romero–Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (finding with regard to Clean Water Act that statutory scheme as a whole contemplates the exercise of discretion and balancing of equities). That

discretion is guided by six statutory factors to be considered by the court: (1) seriousness of the violations; (2) economic benefits (if any) resulting from the violations; (3) history of such violations; (4) good-faith efforts to comply with the applicable requirements; (5) economic impact of the penalty on the violator; and (6) such other matters as justice may require. 33 U.S.C. § 1319(d).

As indicated in the November 4 Opinion, this court, in exercising its discretion under the Clean Water Act, will take into account the previous assessment of penalties against Hercules by the NJDEP, given the significant experience and expertise of the NJDEP in the area. The court has also previously noted that the factors used by the NJDEP in assessing penalties for defendant's violations of the Jersey Water Pollution Act are substantially the same as the six factors to be used by this court in assessing a civil penalty. *See* N.J.A.C. 7:14–8.5 (factors to be considered are the seriousness of the violations; conduct of the violator; history of violations; number, frequency and severity of violations; measures taken by the violator to mitigate the effect of the current violations or to prevent further violations; and the deterrent effect of the penalty). Since this court has no interest in duplicating the efforts of a specialized body such as the NJDEP, it will permit arguments by Hercules that the penalty assessed by the NJDEP was sufficient and should be presumed adequate for the purposes of this court's assessment of a civil penalty under the Clean Water Act.

In moving for clarification, plaintiffs raise the point that the court's November 4, 1996, Order and Opinion set forth somewhat conflicting standards of deference to be given to the NJDEP's determination of an appropriate penalty. In the body of the Opinion, the court establishes that a presumption of adequacy will be given to the NJDEP's penalty assessment provided that three factors have been met with regard to the decision-making process used by the NJDEP:

(1) there was a meaningful degree of citizen participation;

(2) there is evidence of a careful, individualized determination based on all the relevant facts; and

(3) the process resulted in an effective remedy for society sufficient to abate and deter pollution.

(Opinion at 9–10)

These factors will in fact guide and limit the Court's inquiry into the NJDEP process. The parties should disregard the more narrow and deferential language of the Order, suggesting that substantial deference will be given to the NJDEP and its penalty assessment presumed adequate absent a showing of fraud or illegality in the decision making process.

[4] In order the establish a presumption of adequacy at trial, Hercules will have the burden of showing that the negotiated settlement memorialized in the Administrative Consent Order was obtained through a process characterized by the three elements mentioned above. The plaintiffs will then have the opportunity to rebut the presumption by showing that the decision making process was flawed. Evidence of an incomplete or irregular decision-making process will weaken the presumption of adequacy. In addition to showing fraud or illegality in the NJDEP process, if any, plaintiffs will be permitted to present evidence that shows they were not afforded meaningful participation, or that the NJDEP failed to consider relevant facts—including a consideration of Hercules' economic benefit—or that the resulting remedy was not effective in deterring and abating pollution by Hercules.

Finally, by way of clarification, the court notes that the language of the Order which restricts plaintiffs to presenting evidence from the administrative record may have been phrased too narrowly, especially given the informal nature of the NJDEP proceedings and the lack of an actual "Administrative Record." Plaintiffs may present any evidence necessary to rebut the presumption of adequacy afforded the NJDEP decision, including evidence that certain relevant information was missing from the administrative record.

This trial will not become a reconstruction of the NJDEP process, for this court does not in fact review the findings of the NJDEP, least of all in the context of a negotiated consent decree as opposed to an administrative adjudication. The issue before this court is whether to afford substantial weight to the results achieved in the ACO of March, 1991, with regard to almost all of the effluent violations that are before this court, given the facts and history significant (and perhaps unique) to this case. Until such proofs, among others, are heard and considered at trial, it is not possible to determine whether defendant will ultimately succeed in persuading this court to give substantial weight and deference to the NJDEP's ACO and the results it may have achieved in terms of abatement and deterrence.

### III. *Conclusion*

As in all citizen suits brought under the Clean Water Act, plaintiffs have the ultimate burden in this case. At trial, after hearing evidence from the parties, this court will assess the need for the imposition of a civil penalty under the six statutory factors set forth in the Clean Water Act. In making this determination as to the violations previously considered by the NJDEP, the court will give substantial deference to the findings of the NJDEP and presume the adequacy of its penalty assessment as long as the defendant can establish that the decision-making process contained a meaningful degree of citizen participation; included a careful, individualized determination based on all the relevant facts; and resulted in an effective remedy for society sufficient to abate and deter pollution. The ultimate determination of the civil penalty will be based upon this court's assessment of the six factors of 33 U.S.C. § 1319(d), guided in part by the deference, if any, to which the NJDEP's Administrative Consent Order procedure and determination may be afforded.

### *ORDER*

This matter having come before the court upon plaintiffs' motion for clarification of this court's Opinion and Order of November 4, 1996; and this court having considered the submissions of the parties and heard oral argument on the motion;

It is this 2nd day of January, 1997, hereby

ORDERED that plaintiffs' motion be, and hereby is *GRANTED;* and it is

FURTHER ORDERED that the Opinion and Order of November 4, 1996, be, and hereby is, clarified as set forth in the attached opinion, *signed on today's date.*