**Sigmund FRIED and Sam Wurst**

v.

**SUNGARD RECOVERY SERVICES, INC., Sungard Data Systems, Inc., James Dibrino, Mike Mulholland and Intech Construction, Inc.**

No. 95–CV–0878.

United States District Court,
E.D. Pennsylvania.

Sept. 26, 1995.

Mark R. Cuker, Williams & Cuker, Philadelphia, PA, for plaintiffs.

Roger F. Cox, Kenneth N. Klass, Kerry Nelson, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for defendants Sungard, Dibrino, and Mulholland.

John P. McShea, III, Eckert Seamans Cherin & Mellott, Philadelphia, PA, for Intech Corp.

## MEMORANDUM

JOYNER, District Judge.

Plaintiffs Sigmund Fried and Sam Wurst bring this lawsuit on behalf of themselves and persons similarly situated. Fried and Wurst allege that they and the other mem-

bers of the purported class were exposed to asbestos during the course of renovations that Defendants performed at 401 North Broad Street in Philadelphia, Pennsylvania. Defendants are Sungard Recovery Services (SRS), Sungard Data Systems (SDS), two officers of SRS, James Dibrino and Michael Mulholland, and a construction company hired by SRS and SDS, Intech Construction.

The Second Amended Complaint alleges that Defendants decided to fraudulently conduct the renovations without disclosing to Plaintiffs or the appropriate government authorities the presence, release and disposal of asbestos. Defendants allegedly did this because legal asbestos activities are very expensive and Defendants wished to maintain profits to their respective companies. Mulholland and Dibrino allegedly took part in the fraud because they were participants in SDS's Executive Incentive Compensation Program (EIC), which awards bonuses based on SRS and SDS's income and net revenue.

The Motion to Dismiss filed by SRS, SDS, Mulholland and Dibrino seeks a dismissal or summary judgment on five of the eight counts in the Second Amended Complaint.[1] These five counts seek relief under (1) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1984 & Supp.1995) (RICO), (2) the Clean Air Act, 42 U.S.C. §§ 7401–7671q (1995), (3) the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601–9675 (1995) (CERCLA), (4) unjust enrichment and restitution and (5) fraud.

## STANDARDS FOR MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

In considering a Rule 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990). The Court must accept as true all of the allegations in the pleadings

and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

If materials outside the pleading are considered by the court, the motion to dismiss shall be treated as one for summary judgment. Fed.R.Civ.P. 12(b)(6). In considering a motion for summary judgment, a court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 255, 106 S.Ct. at 2513. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

## I. Count One

Count One makes claims under RICO against Mulholland and Dibrino, the Individual Defendants. They move this Court to

---

1. During the pendency of this Motion, we permitted Plaintiffs to Amend the Amended Complaint. Defendants represented in pleadings on the Motion to Amend that their arguments in this Motion were not affected by the Second Amended Complaint. Accordingly, we treat this Motion as one to dismiss or for summary judgment of the Second Amended Complaint.

dismiss Count One on several grounds. We will address each alleged ground for dismissal in turn.

## A. Injury to Business or Property

■ In order to have standing under RICO, a plaintiff must have been "injured in his business or property." 18 U.S.C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The Supreme Court has determined that Congress intended the words "business or property" in the RICO statute to be words of exclusion. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). For that reason, injury to the person does not grant RICO standing. *Id.*

■ Defendants argue that Plaintiffs fail to state a RICO cause of action because they do not allege an injury to their business or property. The Second Amended Complaint alleges that Plaintiffs' pay was kept at artificially low levels because they did not receive the hazard pay they would have demanded had they known of the presence of asbestos in their working environment. Second, the complaint alleges that Plaintiffs will incur medical monitoring expenses in the future because of their exposure to asbestos. 2d Am. Complaint ¶ 36.

Defendants cite numerous cases holding that exposure to toxic chemicals is a personal injury that does not grant standing under RICO. *Genty v. RTC,* 937 F.2d 899, 918–19 (3d Cir.1991); *Doe v. Roe,* 958 F.2d 763, 767 (7th Cir.1992); *Berg v. First State Ins. Co.,* 915 F.2d 460, 464 (9th Cir.1990); *Rylewicz v. Beaton Servs.,* 888 F.2d 1175, 1180 (7th Cir. 1989); *Grogan v. Platt,* 835 F.2d 844, 846 (11th Cir.), *cert. denied,* 488 U.S. 981, 109 S.Ct. 531, 102 L.Ed.2d 562 (1988); *Drake v. B.F. Goodrich Co.,* 782 F.2d 638 (6th Cir. 1986). The Third Circuit has held that claims for medical monitoring are also claims for personal injury. *Genty,* 937 F.2d at 918.

Plaintiffs argue that they do not plead personal injury, but economic injury, in that they seek lost wages and reimbursement for medical monitoring. They cite many cases holding that a claim for lost wages is a claim

for injury to business. *Hunt v. Weatherbee,* 626 F.Supp. 1097, 1100–01 (D.Mass.1986); *Rodonich v. House Wreckers Union,* 627 F.Supp. 176, 180 (S.D.N.Y.1985); *Schenk v. Southeast Banking Corp.,* 725 F.Supp. 1231 (S.D.Fla.1989). *See also Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1170 (3d Cir.1989) ("loss of earnings, benefits, and reputation constitute self-evident injury as in any standard wrongful discharge action"); *Callan v. State Chem. Mfg. Co.,* 584 F.Supp. 619 (E.D.Pa.1984) (injury to business when employees forced to pay bribes to customers out of employees' earnings). In each of these cases, the employee seeking lost wages had been discharged from their job as part of the RICO violations. None of the cases mention medical monitoring or involve claims for hazard pay.

We find that Plaintiffs' claim for medical monitoring is a claim for personal injury and not a claim of injury to business or property. *Genty,* 937 F.2d at 918–19. Although it is a closer question, we find that Plaintiffs' claim for hazard pay is also a claim for injury to the person. The Second Amended Complaint alleges that Plaintiffs would have sought "hazard pay and other wage compensation premiums which would have been required by the Plaintiff-class in order to induce them to go to work in an environment contaminated by dangerous asbestos fibers." 2d Am. Complaint ¶ 21g.

■ Hazard pay, therefore, appears to be payment made as compensation for the fear of catching a disease. Fear is a type of emotional distress, and is therefore not covered by RICO. Courts have recognized that "recovery for personal injury has pecuniary aspects." *Grogan v. Platt,* 835 F.2d 844, 847 (11th Cir.1988). But, these courts stress, it is important to distinguish between the pecuniary harm that arises from personal injuries and the pecuniary harm that arises from injury to business or property. *Id.*

We find that Plaintiffs' claim for hazard pay is somewhat analogous to the claim for expenses the plaintiff incurred in *Roe,* 958 F.2d at 767. There, plaintiff alleged that defendant, the attorney who represented her in her divorce, defrauded her into paying for his services with sexual relations. *Id.* at 764.

When plaintiff sued the lawyer, he retaliated in part by threatening her physically, which prompted her to buy a security system and caused her to lose work. The Court held that plaintiff's "loss of earnings, her purchase of a security system and her employment of a new attorney are plainly derivatives of her emotional distress—and therefore reflect personal injuries which are not compensable under RICO." *Id.* at 770.

In another analogous case, the Ninth Circuit held that loss of insurance coverage was not an injury to business or property. *Berg,* 915 F.2d at 464. The Court held that an insurance contract's value is the peace of mind it gives the insured. Therefore, the Court held, the complaint pleaded a claim for emotional distress, not injury to property, and dismissed the RICO claim. *Id.*

We find that Plaintiffs' claim for hazard pay is at base a claim for emotional distress.[2] Because injury to the person does not provide standing under RICO, we must dismiss Count One.

### B. Fed.R.Civ.P. 9(b)

■ In addition to the above argument, Defendants assert that Count One of the Second Amended Complaint does not comport with Federal Rule of Civil Procedure 9(b). This Rule requires fraud claims to be pleaded with particularity. In the Third Circuit, a plaintiff must plead "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged." *Seville Indus. Machinery v. Southmost Machinery,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). This does not require pleading the date, place and time of each fraudulent occurrence, however. *Id.* For example, in *Seville,* the Third Circuit found that Rule 9(b) was met when the complaint incorporated a list "identifying with great specificity" the products plaintiff had allegedly bought due to defendants' fraud, and the list was, in turn, divided into five sections which identified the exact products that were the subject of each fraudulent transaction. *Id.* In contrast, when a plaintiff simply asserts that misrepresentations were made, Rule 9(b) is not met. *Brossman Sales, Inc. v. Broderick,* 808 F.Supp. 1209, 1213 (E.D.Pa. 1992). In *Brossman,* our Court dismissed a RICO claim where the "plaintiff fail[ed] to include anywhere in its complaint even a vague description of what misrepresentations were made and to whom." *Id.*

■ Here, Plaintiffs plead that:

the pattern of racketeering activity consisted of numerous acts of mail fraud (violating 18 U.S.C. § 1341) and wire fraud (violating 18 U.S.C. § 1343) in furtherance of their scheme to defraud the Plaintiff class, the governmental authorities, the owner of 401 North Broad Street, visitors to the building, and persons removing asbestos containing materials from the site and disposing of them.

2d Am. Complaint ¶ 34.

The Second Amended Complaint further pleads that the illegal uses of the mails and wires included, but were not limited to: (1) transmission of communications and payments to persons participating in the illegal asbestos removal; (2) payments to individual defendants of their EIC bonuses; (3) transmission to governmental authorities of communications, correspondence, permits, and payments for permits for building, construction and related activities which involved the illegal asbestos removal without disclosing that involvement, and (4) failing to make reports required under the Clean Air Act and CERCLA. 2d Am. Complaint ¶ 35.

We find that these allegations fail to plead the alleged fraud with sufficient particularity. Although the Second Amended Complaint

---

**2.** Even were we not to rule as we do, it is unclear whether Plaintiffs' speculative claims for hazard pay state a legal injury. In this sense, the claim is similar to the one made in *Martin v. Fleet National Bank,* 676 F.Supp. 423 (D.R.I.1987), where the Court found no cognizable RICO injury. There, a mortgagor alleged that his lender fraudulently coerced him into selling his property at less than fair market value. *Id.* at 431. The Court held that although "plaintiffs have indeed suffered injury to their business and property in the lay sense of that term,.... [i]t is not the function of the law to insure against those risks which permit the possibility of profit in the rough and tumble business world of the Hobbesian man." *Id.* at 432.

provides enough information to meet the requirements of Rule 8(a), more is needed to meet Rule 9(b). Here, there are no allegations of the nature or even the subject of the misrepresentations to the various plaintiffs, defendants and governmental entities involved. For this reason, we find that Plaintiffs' Second Amended Complaint fails to meet the particularity requirement of Rule 9(b).

### C. Pattern of Racketeering

■ Defendants further allege that Plaintiffs have failed to plead a pattern of racketeering. They argue that none of Plaintiffs' allegations show that the predicates are related or amount to or pose a threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Tel.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). We disagree with this interpretation of Plaintiffs' Second Amended Complaint. The Second Amended Complaint sufficiently ties the predicates together by alleging the motive behind the alleged fraud, namely, to increase profits to Defendants by not expending monies on a proper asbestos removal. 2d Am. Complaint ¶¶ 21, 26–28, 34. For this reason, we find that Plaintiffs have sufficiently pleaded a pattern of racketeering.

Because we found above that Plaintiffs do not have standing under RICO and that they had not pleaded fraud with specificity, we grant Defendants' Motion to Dismiss Count One of Plaintiffs' Second Amended Complaint.

## II. Count Two

Count Two alleges that SDS and SRS violated the Clear Air Act. Defendants move to dismiss this claim on the grounds that (1) Plaintiffs failed to provide the required notice under the Clean Air Act, (2) there is no basis for a claim against SDS[3] and (3) Plaintiffs do not have standing to seek relief because there are no ongoing and continuing violations of the Clean Air Act. We will address each argument in turn.

### 1. Notice Requirements

■ The Clean Air Act[4] provides that any person may bring a suit against any other person alleged to have violated (if the violation was repeated) or alleged to be in violation of an emission standard or limitation. 42 U.S.C. § 7604(a)(1). The Act requires that this so-called "citizen plaintiff" give sixty-days notice to the alleged violator, the State and the EPA Administrator. 42 U.S.C. § 7604(b). Congress delegated the contents of the sixty-day notice to the EPA. The notice must:

> permit the recipient to identify [1] the specific standard, limitation, or order which has allegedly been violated, [2] the activity alleged to be in violation, [3] the person or persons responsible for the alleged violation, [4] the location of the alleged violation, [5] the date or dates of such violation, and [6] the full name and address of the person giving the notice.

40 C.F.R. § 54.3 (1994); *Public Int. Research Grp. v. Hercules, Inc.,* 50 F.3d 1239, 1249 (3d Cir.1995). A plaintiff must comply with the notice provisions before there is subject matter jurisdiction over the action. *Hallstrom v. Tillamook County,* 493 U.S. 20, 31, 110 S.Ct. 304, 311 (1989). The Supreme Court has held that these provisions are mandatory and cannot be waived. *Id.* The Court takes these requirements so seriously that in *Hallstrom* it dismissed an action for failure to comply with the sixty day requirement even though the action had been litigated for years and there was a decision on the merits. *Id.* at 32, 110 S.Ct. at 312.

---

3. This argument is, in fact, made for every count in which SDS is a defendant. The reasons that dispose of this argument for Count One's purposes apply equally to the other counts. Therefore, we will not repeat the arguments and the resolution in each count, but simply incorporate them now.

4. The notice provisions of this Act are substantially similar to other federal environmental laws such as the Clean Water Act, CERCLA and the Resource Conservation Recovery Act. The parties agree that judicial interpretations of like requirements in other environmental statutes are useful to interpret notice requirements in this Act. *Hallstrom v. Tillamook County,* 493 U.S. 20, 30, 110 S.Ct. 304, 311, 107 L.Ed.2d 237 (1989).

■ Defendants allege that Fried's notice is insufficient in its content and in its timing.[5] The notice Fried sent states, in pertinent part:

Sungard Recovery Services, Sungard Data Systems, Intech Construction, Inc. and Veland, Junker, McCauley violated The Clean Air Act by repeatedly conducting renovations at 401 N. Broad Street, Philadelphia, PA 19106 in violation of the National Emissions Standard for Asbestos. These violations occurred repeatedly between 1990 and 1994 and are continuing.

We find that this letter provides sufficient notice to meet the requirements of the Clean Air Act, albeit barely. The notice states that the Defendants' renovations violated the National Emission Standards for Asbestos (NESA), found within the National Emission Standards for Hazardous Air Pollutants (NESHAPS). 40 C.F.R. § 61.140–.157. Although there is no cite to a specific section of NESA, the reference to renovations brings one to the only section in NESA that applies to renovations, 40 C.F.R. § 61.145. The notice, therefore, provides enough information for the recipient to identify the specific standard allegedly violated. *Hercules,* 50 F.3d at 1247–48. In addition, the notice limits the alleged violations to a discrete period of time, although only by a very general range of dates. *Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Ctr.,* 891 F.Supp. 152 (1995) ("specific dates need not be included in letter," so "discrete, specific time-frame" is acceptable alternative) (citing *Hercules,* 50 F.3d at 1239). The notice, moreover, provides Fried's full name and address, the alleged violators' identities and the location of the alleged violations.[6]

We find that this information is sufficient to allow the EPA and the State to determine whether to initiate an enforcement action, and sufficient to allow the Defendants to bring themselves into compliance. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987); *Hercules,* 50 F.3d at 1249 ("ultimate goal of a citizen suit is to bring the alleged violator into compliance with the nation's environmental laws.... judge the sufficiency of the plaintiffs' 60–day notice letter in terms of whether it accomplishes these purposes.").

■ Having found that Fried's sixty-day notice meets the bare minimum of the content requirement, we turn now to its timing. The Clean Air Act requires a sixty day delay between service of the notice and commencement of an action. The only exception is for actions brought under 42 U.S.C. §§ 7412(i)(3)(A), (f)(4), or § 7413(a). These actions may be brought immediately after serving notice. 42 U.S.C. § 7604(b). Section 7412(i)(3)(A) provides that "after the effective date of any emissions standard, ... no person may operate such source in violation of such standard."

Fried points out that the original complaint brought suit under § 7412(i)(3)(A) by alleging violations of NESHAPS, an emission standard. Because of this, he argues, he did not need to wait sixty days to sue under that section. He added the other claims raised in his sixty-day notice by amending the Complaint more than sixty days after serving the notice.

Defendants argue that the exception for actions under § 7412(i)(3)(A) only applies when there is risk of an imminent hazard or danger. Because Fried does not allege imminent harm in either his notice or the complaint, Defendants argue that the exception does not apply. They do not cite any caselaw to support this interpretation of § 7604.

---

**5.** Wurst was not a party to Fried's notice letter and has never sent a notice letter of his own. Plaintiffs do not provide any support for their assertion that Wurst's failure to provide notice can be waived. As discussed above, the Supreme Court has held that notice is a "mandatory, not optional, condition precedent for suit." *Hallstrom,* 493 U.S. at 26, 110 S.Ct. at 309. For this reason, we must dismiss Wurst from Count Two. *Washington Trout v. McCain Foods, Inc.,* 45 F.3d 1351, 1354 (9th Cir.1995).

**6.** The Second Amended Complaint includes allegations of asbestos in the mezzanine area of the building. With this addition, asbestos violations are now alleged to have occurred in all the parts of the building occupied by Defendants. A more specific identification of location, therefore, is not necessary.

■ We find that the language of the statute does not require an imminent hazard to activate the sixty-day exception. Defendants may be right that it makes more sense to only permit an exception when there is an imminent danger, but Congress has not chosen this course. Rather, Congress permits all suits that allege violations of § 7412(i)(3)(A) to be brought immediately after notice is served. *Hallstrom*, 493 U.S. at 26–27, 30, 110 S.Ct. at 309, 311. For this reason, we find that Fried's allegation of a violation of § 7412 permitted him to commence his action without waiting sixty days. In addition, we find that Fried's course of amending the complaint after sixty days had passed to include his additional claims is an acceptable way to bring suit under § 7412 and other sections of the Clean Air Act. *Clorox Co. v. Chromium Corp.*, 158 F.R.D. 120, 126 (N.D.Ill.1994). *City of Heath v. Ashland Oil, Inc.*, 834 F.Supp. 971, 984 (S.D.Ohio 1993); *Zands v. Nelson*, 779 F.Supp. 1254 (S.D.Cal.1991); *see also Hercules*, 50 F.3d at 1252 n. 15.

### 2. Sungard Data Systems

■ Defendants assert that there is no evidence to support claims against SDS, the parent of SRS. Accordingly, they seek summary judgment in SDS's favor for all claims against it. To support this request, they attach an affidavit of William J. Flounders, the Senior Vice President, Finance, for SRS. He avers that SDS has never leased space at 401 N. Broad Street, nor has SDS ever conducted or paid for renovations at the building.

In response, Plaintiffs request additional time to take discovery and to receive SDS's answer to their complaint. Plaintiffs also provide the deposition testimony of Fried, wherein he averred that SDS actually funds the money to pay for the renovations to SRS. We find that this conflicting evidence creates a material issue of fact, and so deny summary judgment as to SDS. Because of the early stage of discovery at this point, however, our denial is without prejudice.

### 3. Ongoing and Continuing Violations

■ Finally, Defendants argue that before this Court has subject matter jurisdiction over Count Two, Plaintiffs must offer proof of a good-faith basis for their allegation of ongoing and continuing Clean Air Act violations. They cite *Gwaltney*, 484 U.S. at 67, 108 S.Ct. at 386, as support for this argument. In fact, *Gwaltney* actually held that mere allegations of ongoing and continuing violations provide subject matter jurisdiction. *Id.* at 64, 108 S.Ct. at 385. The Supreme Court relied on Federal Rule of Civil Procedure 11 to ensure that any allegations would be made in good faith. *Id.* at 65, 108 S.Ct. at 385.

We too will rely on Rule 11 and in the rule that we take well pleaded facts as true for the purposes of motions to dismiss. *Natural Resources Defense Council v. Texaco Ref'g & Mkt'g, Inc.*, 2 F.3d 493 (3d Cir.1993). We will not demand proof at this stage. Because the Second Amended Complaint contains adequate allegations of ongoing and continuing violations, we do not dismiss Count Two for lack of subject matter jurisdiction.

### III. Count Three

Count Three alleges that SRS and SDS violated CERCLA. Defendants challenge this claim on the ground that Plaintiffs' pre-suit notice was inadequate. Many of Defendants' notice arguments are the same as those made with respect to the Clean Air Act count. These include Wurst's failure to provide any notice, a lack of specificity in Fried's notice and failure to wait the sixty day delay period. One new objection is raised, and because it is determinative of Count Three, we will not discuss the others.

■ CERCLA requires plaintiffs to serve a sixty-day notice on the President, the State in which the alleged violations occurred and on the alleged violator. 42 U.S.C. § 9659(d)(1). Congress gave the President the power to prescribe by regulation the manner in which notice shall be given. *Id.* The President has delegated this regulation-making power to the Administrator of the Environmental Protection Agency. Exec. Order No. 12580, 3 C.F.R. 193 (1987), as amended by Exec. Order No. 12777, 3 C.F.R. 351 (1991). The Administrator requires that

"[n]otice of intent to file suit under [42 U.S.C. § 9659(a)(1)] of the Act *shall* be served by personal service ...: to the United States Attorney General; to the Attorney General of the State in which the violation is alleged to have occurred; *and* to the head of the Federal agency with delegated responsibility for the CERCLA provision allegedly violated." 40 C.F.R. § 374.2(a) (emphasis added).

Here, Fried served notice on the Administrators of both the National and Regional EPA, Pennsylvania's Governor, Pennsylvania's Department of Natural Resources (DER) and the alleged violators. Fried did not serve notice on the United States Attorney General or Pennsylvania's Attorney General. Plaintiff argues that this failure is curable because both the President and the State were notified via the notices he sent to their delegates, the EPA and the DER. He argues that his notification complies with the statute and that because of this, his failure to comply with the regulation is waivable. He cites *Comite Pro Rescate De La Salud v. PRASA,* 693 F.Supp. 1324 (D.P.R.1988), *vacated on other grounds,* 888 F.2d 180 (1st Cir.1989), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990), as support for this proposition.

*PRASA* held that compliance with a regulation's notice requirements were waivable so long as the statute's notice requirements were met. *Id.* at 1333–34. It is questionable whether *PRASA*'s holding is still good law considering that it was decided before the Supreme Court's decision in *Hallstrom,* which held that notice provisions are jurisdictional and cannot be waived. 493 U.S. at 30, 110 S.Ct. at 311. Regardless, *PRASA* is not binding on this Court, and we find that its holding is not helpful to this analysis.

The regulation clearly provides that *each* person listed must be notified before a suit may be commenced. 40 C.F.R. § 374.2(a)(1). Because two of the four people listed in the regulation did not receive a sixty-day pre-suit notice, we must find that we have no jurisdiction over the claim and dismiss it.

This ruling may appear to place form over reason, but in fact, dismissal for failure to comply with notice requirements furthers Congress's purpose in creating a notice requirement. Section 9659 provides that a citizen suit may be commenced only if the President, through the Attorney General, is not already diligently pursuing his own action. 42 U.S.C. § 9659(d)(2); Exec. Order No. 12580. If the Attorney General is not given notice of the alleged violation, she cannot determine whether to commence an action or permit the citizen suit to go forward in place of a federal action. If the Attorney General does not have this choice, the preference for government suits over citizen suits is defeated. *See e.g. Roe v. Wert,* 706 F.Supp. 788, 793 (W.D.Okl.1989) (citing House Report that citizen suits are to "complement, and not interfere with, Federal regulatory and enforcement programs"). Because we have no jurisdiction over Plaintiffs' CERCLA claim, we Dismiss Count Three.

## IV. Counts Four and Five

■ Defendants argue that Counts Four and Five should be dismissed because they are barred by the exclusivity provisions in Pennsylvania's Workers' Compensation Act, 77 Pa.Cons.Stat.Ann. §§ 1–682 (1992). Count Four alleges that Mulholland, Dibrino, SRS and SDS were unjustly enriched and seeks restitution from them. Plaintiffs allege that they conferred a benefit upon the Defendants by working at their normal rates of pay in a dangerous, asbestos-filled environment. As a result, Plaintiffs assert, Defendants were unjustly enriched because they did not have to expend revenues normally incurred in a legal asbestos renovation job, nor disburse the hazard pay that Plaintiffs would have demanded had they known of the asbestos.

Count Five alleges that SDS and SRS fraudulently induced Plaintiffs to continue to work at their normal rate of pay by not informing them of the presence of asbestos in the environment. As a result, Plaintiffs allege that they did not receive hazard pay and will have to incur medical monitoring expenses in the future.

■ In Pennsylvania, Workers' Compensation is an employee's exclusive remedy for all injuries arising in the course of employment. 77 Pa.Cons.Stat.Ann. §§ 411(1); 481.

Workers' Compensation covers claims for emotional distress as well as claims for medical monitoring. *Archer v. W.C.A.B.*, 138 Pa. Commw. 309, 313, 587 A.2d 901, 903 (1991) (emotional distress); *Papa v. Franklin Mint Corp.*, 400 Pa.Super. 358, 583 A.2d 826, (1990) (depression), *Jackson Township Volunteer Fire Co. v. Workmen's Compensation Appeal Board*, 140 Pa.Commw. 620, 594 A.2d 826 (1991) (medical monitoring).

Intentionally caused injuries are covered by Workers' Compensation unless the injury is intentionally inflicted for a reason personal to the injured. 77 Pa.Cons.Stat.Ann. § 411(1); *Barber v. Pittsburgh Corning Corp.*, 521 Pa. 29, 39, 555 A.2d 766, 772 (1989); *Higgins v. Clearing Mach. Corp.*, 344 Pa.Super. 325, 331, 496 A.2d 818, 821 (1985). This is so even if an employer intentionally permits employees to be exposed to a known danger, unless there is an actual intent to injure that particular employee. *Id.* Generally, other employees also have immunity from common-law actions for the injuries they cause, except in the case of intentionally caused disability or death. 77 Pa.Cons.Stat. Ann. § 72.

Plaintiffs argue that they do not seek relief for physical injuries, but that their claims simply seek restitution and other economic relief. They liken their claims to those made in *Todora v. Jones & Laughlin Steel Corp.*, 304 Pa.Super. 213, 450 A.2d 647 (1982). There, a class of employees sued their employer for the full value of services they provided. The class alleged that they were asked to and did work many extra hours but were not paid for that extra time. *Id.* at 215, 450 A.2d at 647–48.

Plaintiffs also cite *Martin v. Lancaster Battery Co.*, 530 Pa. 11, 606 A.2d 444 (1992). There, an employer knowingly falsified the results of an employee's blood tests to conceal elevated levels of lead in the employee's blood. The employee suffered from a pre-existing medical condition for which lead exposure was particularly dangerous. *Id.* at 11, 606 A.2d at 446. The Pennsylvania Supreme Court held that under those facts, Workers' Compensation was not the employee's exclusive remedy because of the affirmative, fraudulent acts of the employer. *Id.* at 18, 606 A.2d at 448. The Court distinguished between employers "who tolerate work-place conditions that will result in a certain number of injuries or illnesses and those who *actively* mislead employees already suffering as the victims of workplace hazards." *Id.* (emphasis in original).

■ Above, we found that Plaintiffs' claims for hazard pay are, at bottom, claims for personal injury because they seek extra payment to compensate them for the fear of catching a disease. Fear is a type of emotional distress, and is therefore covered by Workers' Compensation. *Archer*, 138 Pa. Commw. at 313, 587 A.2d at 903; *Papa*, 400 Pa.Super. at 358, 583 A.2d at 826–27; *see also Jackson*, 140 Pa.Commw. at 620, 594 A.2d at 828 (injury covered by Workers' Compensation "was the risk of infection"). Plaintiffs do not allege that SRS or SDS intended to cause them injury in a personal sense, and so the intentional tort exception does not serve to remove immunity from SRS and SDS. 77 Pa.Cons.Stat.Ann. § 411(1). Neither do Plaintiffs allege death or disability, so the co-employee intentional tort exception does not apply. 77 Pa.Cons. Stat.Ann. § 72. For these reasons, we find that Counts Four and Five are barred by the exclusivity provisions of Pennsylvania's Workers' Compensation Act, and therefore dismiss these Counts.

An appropriate Order follows.