Robert **DEAN** and Rosemary Dean, h/w, Robert G. Glassmyer and Deborah Glassmyer, h/w, Kenneth W. Hite, Jr., and Ada Hite, h/w, George Leathery, Jr., Van D. Poff, John Noll and Linda Noll, h/w, Melvin H. Weekley and Mary Weekley, h/w, Plaintiffs,

v.

**HANDY & HARMAN,** Lucas–Milhaupt, Inc., Englehard Corp., Caterpillar, Inc., Defendants.

Civil Action No. 1:CV–96–1798.

United States District Court, M.D. Pennsylvania.

March 13, 1997.

Gerald J. Williams, WIlliams & Cuker, Philadelphia, PA, for Plaintiffs.

Patrick J. O'Connor, Karl Prior, Cozen and O'Connor, Philadelphia, PA, for Handy & Harman, Lucas–Milhaupt Inc.

Raja G. Rajan, Shumaker Williams, P.C., Harrisburg, PA, Laurence W. Dague, Shumaker & Williams, Camp Hill, PA, Michael Hassett, Englehard Corp., Iselin, NJ, Allen S. Joslyn, Scott Martin, Howard G. Sloane, Thomas R. Jones, Cahill, Gordon & Reindel, New York City, for Englehard Corp.

Harvey Freedenberg, Dana S. Scaduto, McNees, Wallace & Nurick, Harrisburg, PA, Delano M. Lantz, Harrisburg, PA, Michael R. Feagley, John C. Berghoff, Craig E. Reimer, Mark Ter Molen, Karen L. Prena, Mayer, Brown and Platt, Chicago, IL, for Caterpillar Inc.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

This is a diversity action controlled by Pennsylvania law which the defendant, Caterpillar, Inc., removed here with the concurrence of the other defendants.

The plaintiffs, Robert Dean, Robert G. Glassmyer, Kenneth Hite, Jr., George Leathery, Jr., Van D. Poff, John Noll, and Melvin H. Weekley, are workers or former workers at the plant Caterpillar operated in York, Pennsylvania. They sued Caterpillar and three other defendants, Handy & Harman, Lucas–Milhaupt, Inc., and Englehard Corp., in state court, alleging that they were seriously injured from chronic exposure to cadmium and fluoride at the plant. The three other defendants are alleged to have manufactured the products containing the chemicals. The wives of Dean, Glassmyer, Hite, Noll and Weekley are also plaintiffs and suing for loss of consortium.

We are considering Caterpillar's motion under Fed.R.Civ.P. 12(b)(6) to dismiss for failure to state claim, or, in the alternative, for a more particular statement under Fed. R.Civ.P. 9(b) as to the complaint's allegations of fraud against Caterpillar.

The main question raised by Caterpillar's motion is whether the plaintiffs have successfully avoided the statutory bar to suit against an employer presented by the Pennsylvania Workers' Compensation Act (WCA) by making allegations that might bring them within an exception to that bar created in *Martin v. Lancaster Battery Co., Inc.*, 530 Pa. 11, 606 A.2d 444 (1992), for fraudulent misrepresentations by an employer that aggravate a work-related injury.

Because we are dealing with a motion to dismiss, we must accept as true the factual

allegations in the complaint and construe any inferences to be drawn from them in the plaintiffs' favor. *See Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir.1993). With this standard in mind, we set forth the background to this litigation, as the plaintiffs allege it.

## II. *Background.*

The complaint avers that the plaintiff workers were exposed to toxic levels of fluoride and cadmium while they were employed in various capacities on or near the oil cooler line in Department 54 at Caterpillar's plant. The chemicals were in brazing rods, rings, and fluxes, products manufactured by the other defendants.

The plaintiffs' dates of employment in the Department varied. Dean worked there from the beginning of his employment with Caterpillar in 1969 until his retirement in 1995. Glassmyer was there from 1972 until the present. Hite was there from 1970 until 1993. Leathery was there from 1969 until the present. Poff was there from 1972 until the present. Noll was there from 1968 until 1988. Weekley was there from 1977 until the present.

The plaintiffs do not allege when each of the injured workers first began to experience symptoms relating to exposure to cadmium or fluoride. They do allege that none of them could have connected their physical conditions and symptoms to such exposure until five of them, Dean, Glassmyer, Poff, Leathery and Weekley, had medical tests performed sometime after September 10, 1994, which indicated high levels of cadmium in their blood.

Count IV of the complaint is directed to Caterpillar and alleges that Caterpillar made three fraudulent misrepresentations to the plaintiffs. First, Caterpillar falsely represented that their workplace was safe and free from harmful levels of toxic chemicals:

56. At all times material hereto, Defendant Caterpillar represented to plaintiffs that their workplace was safe and free of levels of chemicals capable of causing injury and disease.

57. At the time defendant made these representations, it knew them to be false,

or made them in reckless disregard of the truth.

Second, Caterpillar falsely represented that the air near the air cooler line was safe by failing to disclose data showing dangerous air levels of cadmium:

58. At all times material hereto, Defendant Caterpillar was in possession of data concerning the levels of cadmium in the air in the brazing area of the Oil Cooler Line.

59. Defendant Caterpillar willfully and intentionally withheld the results of the above-referenced air testing from plaintiffs.

Caterpillar did so even though it knew that exposure to unsafe levels of cadmium "could cause permanent damage to the kidneys and other body organs, which damage would go unnoticed without testing, until the damage was severe and irreversible." (Complaint, ¶ 60(b)).

Third, Caterpillar falsely represented to the plaintiff workers that they were "healthy" despite having discovered sometime in 1993 that the plaintiffs' blood or urine or both had excessive levels of cadmium:

62. Beginning in 1993, Caterpillar discovered that all plaintiffs named herein had been found to have excessively elevated levels of cadmium in their blood and/or urine. Despite this knowledge, Caterpillar, by and through its agents, servants and/or employees thereafter falsely advised plaintiffs that they were "healthy" and had suffered no ill effects or health risks from their exposure.

The plaintiffs closed count IV of their complaint by averring that they had "justifiably relied" on Caterpillar's "representations and disclosures" concerning "the safety of their workplace" and "their exposure to hazardous substances and its health consequences...." (Complaint.¶ 63). They further averred that Caterpillar's fraudulent conduct was intended to "induce plaintiffs to remain in the workplace under hazardous conditions." (*Id.*).

Finally, the plaintiffs alleged that:

64. As a result of defendant's fraudulent and deceitful conduct, plaintiffs were precluded from reducing their exposures to cadmium and receiving timely and ap-

propriate medical testing and treatment. The resulting delay caused an aggravation of the cadmium poisoning of plaintiffs, resulting in the harms and damages averred hereinabove.

Based on the foregoing theory of liability, in count V of the complaint the plaintiff wives bring loss-of-consortium claims against Caterpillar. In count VI, all the plaintiffs seek punitive damages against the defendant.

### III. *Discussion.*

#### A. *The Motion to Dismiss and the Martin Exception.*

Defendant Caterpillar moves to dismiss counts IV, V, and VI, arguing that the plaintiffs' exclusive remedy against their employer is under the WCA. *See* 77 P.S. § 1 et seq. (Purdon & Purdon Supp.1996–97). Hence, they cannot bring this common-law action against Caterpillar. The motion also argues that the plaintiffs cannot invoke the exception to the exclusivity of the Act established in *Martin v. Lancaster Battery Co., Inc.,* 530 Pa. 11, 606 A.2d 444 (1992), for fraudulent misrepresentations by an employer that aggravate a work-related injury:

Generally, the WCA is the sole remedy of an employee against his employer for injuries suffered during the course of employment. *See* 77 P.S. § 481(a) (Purdon 1992). *See also Kohler v. McCrory Stores,* 532 Pa. 130, 615 A.2d 27 (1992); *Hammerstein v. Lindsay,* 440 Pa.Super. 350, 655 A.2d 597 (1995). Section 481(a) also bars any action by others "otherwise entitled to damages in any action at law or otherwise" for a work-related injury.

The WCA's exclusivity provision applies even to intentional conduct of the employer that creates an unsafe workplace. In *Poyser v. Newman & Co., Inc.,* 514 Pa. 32, 522 A.2d 548 (1987), the supreme court, in a reasoned analysis of the pertinent statutory language, held that the Act barred a common-law suit by a worker against his employer even when the employee alleged: (1) he was injured by a machine made unsafe by his employer's willful disregard of its employees' safety and federal and state safety regulations; and (2) the employer had fraudulently

misrepresented safety conditions to federal inspectors by concealing the defective machine from them.

In *Barber v. Pittsburgh Corning Corp.,* 521 Pa. 29, 555 A.2d 766 (1989), the supreme court barred a common-law action in a factual situation closely parallel to the instant one. Specifically, the court held that employees injured by exposure to asbestos dust could not sue at common law even if the employer intentionally allowed unsafe levels of asbestos dust, did not adequately warn the employees of the danger, and falsely represented to its employees that the workplace was safe. Although the court in *Barber* was dealing with the Pennsylvania Occupational Disease Act, 77 P.S. §§ 1201–1603 (Purdon 1992), rather than the WCA, the case is relevant here because of the close similarity between the statutory language granting immunity to the employer in both the Occupational Disease Act and the WCA. In fact, the court placed crucial reliance on *Poyser* in making its ruling.

Obviously, if the plaintiffs' claim against Caterpillar in the instant case paralleled those of the workers in *Poyser* and *Barber,* we would have to grant the motion to dismiss. The plaintiffs do not dispute that. However, as we noted above, in *Martin v. Lancaster Battery Co. Inc.,* 530 Pa. 11, 606 A.2d 444 (1992), the Pennsylvania Supreme Court created an exception to the exclusive remedy under the WCA when an employer makes fraudulent misrepresentations resulting in an aggravation of a work-related injury. In those circumstances, the employer cannot invoke immunity under the WCA, and the employee can sue at common law. *Id.* at 17–18, 606 A.2d at 447–48.

The plaintiffs rely on *Martin* and contend that their suit against Caterpillar can proceed because they are suing for its fraudulent misrepresentations that aggravated work-related injuries arising from exposure to toxic levels of cadmium. Conversely, Caterpillar strenuously argues that *Martin* does not apply and that the plaintiffs drafted their complaint in an artful attempt to avoid the statutory immunity conferred on Caterpillar by the WCA. Because *Martin* is so important

to the resolution of the defendant's motion, we provide here an exposition of that case.

In *Martin*, the defendant company manufactured automotive batteries, and the process exposed its employees to lead dust and fumes. Federal regulations required that the workers' blood be periodically tested for lead content. Additionally, according to the complaint, the company had a policy of "closely monitor[ing] lead levels in employees' blood and . . . report[ing] the results to the employees so that those with elevated levels of lead in their blood could transfer to non-lead areas. . . ." 530 Pa. at 19, 606 A.2d at 448 (brackets added).

The plaintiff worker and his wife sued the company and the manager responsible for administering the blood tests. They alleged that the manager "willfully and intentionally withheld the results of his blood tests" for a period of about three and one-half years, from January 1, 1982, until July 1985. *Id.* at 14, 606 A.2d at 446. They also alleged that the manager had "intentionally altered blood test results before forwarding the results to" him. *Id.* at 14, 606 A.2d at 446. As a result, the plaintiffs alleged that the plaintiff worker:

> was diagnosed with chronic lead toxicity, lead neuropathy, hypertension, gout, and renal insufficiency. The severity of his condition would have been substantially reduced if his employer had not perpetrated a delay by failing to accurately report the elevated levels of lead in Mr. Martin's blood.

*Id.* at 14, 606 A.2d at 446. The plaintiffs made a claim for fraudulent misrepresentation, averring that "[h]ad Mr. Martin been told about the elevated levels of lead in his blood when the tests first indicated such levels, he could have promptly reduced his exposure to lead and received timely and appropriate medical care. Consequently, the severity of his condition would have been substantially reduced." *Id.* at 19, 606 A.2d at 448 (brackets added).

The Pennsylvania Supreme Court held that the WCA did not bar this type of claim against an employer, a claim based on fraudulent misrepresentations resulting in an aggravation of a pre-existing work-related injury. First, the court distinguished *Poyser* and *Barber*, the two precedents we noted above that refused to allow suits against employers even when intentional conduct was alleged. *Poyser* was distinguished on the basis that the fraudulent misrepresentations had been made to third parties, federal safety inspectors, rather than to the injured worker. *Barber* was distinguished on the basis that "fraudulent misrepresentation and aggravation of a pre-existing work-related injury were not raised as issues in the employees' complaint" in that case. *Id.* at 16, 606 A.2d at 447.

Second, the court decided that the WCA's legislative purpose was not:

> to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to the coverage provided by the Workmen's Compensation Act. There is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who actively mislead employees already suffering as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care.

*Id.* at 17–18, 606 A.2d at 448. As further support for its holding, the court also stated that the plaintiff worker was "not seeking compensation for the work-related injury itself," *id.* at 17, 606 A.2d at 447, but for the aggravation of that injury. *Id.* at 16–17, 606 A.2d at 447.

■ Finally, the court held that the allegations satisfied the elements of a fraudulent misrepresentation claim under Pennsylvania law. The elements of that cause of action are:

> (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result.

*Id.* at 19, 606 A.2d at 448 (quoted case omitted).

Although not explicitly set forth by the court, it appears that the first three elements were satisfied when the blood-test results, normally communicated to the workers, were withheld or falsified, thereby causing the worker not to seek medical care or to avoid the areas of the plant with dangerous levels of lead. The fifth element was satisfied because the worker's condition was aggravated by the delay in discovering what his true condition was.

Finally, the fourth element, justifiable reliance, appears to have been satisfied by the following allegations:

> Mr. Martin was regularly exposed to lead fumes and dust at his place of employment. He was tested by his employer to monitor the level of lead in his blood ... the company policy was to closely monitor lead levels in employees' blood and to report the results to the employees so that those with elevated levels of lead in their blood could transfer to non-lead areas....

*Id.* at 19, 606 A.2d at 448.

We turn now to Caterpillar's motion to dismiss.

Caterpillar first argues that the misrepresentation cause of action cannot be based on allegations that it falsely represented that the workplace was safe (the first misrepresentation claim) or that it withheld data showing dangerous air levels of cadmium (the second misrepresentation claim). Caterpillar maintains that *Barber* controls these claims and that, moreover, *Martin* upheld *Barber*'s vitality in this regard. The defendant argues that *Martin* should not be used to overcome *Barber*'s prohibition on "failure to warn" claims.

■ There is no doubt that *Barber* remains good law, and that it prohibits claims against employers for intentionally failing to warn workers of workplace hazards or intentionally failing to disclose information they know about hazardous workplace conditions. But it does not stand for the proposition that a worker cannot make these assertions in the context of a fraudulent-misrepresentation claim. There may be a question whether the worker can satisfy the element of justifiable reliance when making such charges, an issue

we discuss below in connection with the second misrepresentation claim, but *Barber* does not automatically bar such claims if a plaintiff is attempting to come within *Martin.* In *Martin, Barber* was distinguished solely on the basis that the employees in *Barber* did not raise the same issues as the worker in *Martin* did, implying that the outcome in *Barber* might have been different if a fraudulent misrepresentation claim had been alleged there.

In other words, *Martin* controls here, not *Barber.* And *Martin* allows a worker to proceed on a claim underpinned by allegations that an employer either made false statements about the safety of the workplace or remained silent about a workplace hazard as long as the other requirements of *Martin* are satisfied. It is irrelevant that in *Martin* the specific misrepresentations were about lead levels in blood and in the instant case they are about air levels of cadmium. Contrary to Caterpillar's position, *Martin* did not turn on its specific facts.

Caterpillar warns that *Barber* is effectively overruled if claims are allowed to proceed on allegations the employer falsely asserted that the workplace was safe or that the employer withheld data showing dangerous conditions in the workplace. The defendant also invokes the "floodgates" argument, contending that allowance of the plaintiffs' claims would open employers to suits by their workers contrary to the WCA.

However, as we noted above, such allegations alone are not sufficient. They must be accompanied by the other elements laid out in *Martin,* a fraudulent misrepresentation claim which involves the aggravation of a pre-existing injury. These limitations will insure that *Barber* remains good law and that the WCA's exclusivity provision remains effective.

■ Caterpillar also attempts to distinguish *Martin* by arguing that it requires a "particularized, personally directed harm," (Caterpillar's supporting brief at p. 8), citing *Martin* and *Fried v. Sungard Recovery Services, Inc.,* 900 F.Supp. 758 (E.D.Pa.1995). However, as our summary of *Martin* above indicates, the Pennsylvania Supreme Court

did not require a "particularized, personally directed harm." Caterpillar's position in this respect appears to be based on that fact that only one worker claimed injury in *Martin*, but that fact was not crucial to the court's holding in that case. We do not believe that the state supreme court would condone the conduct it found actionable in *Martin* just because it was directed at a group of workers instead of just one.

Additionally, *Fried* does not support this argument. The employees' claims in *Fried* were not rejected because they had not alleged particularized, personally directed harm but because they had not alleged fraud, as *Martin* required. *See* 900 F.Supp. at 768 (distinguishing *Martin* because of the "affirmative, fraudulent acts of the employer" there).

■ Caterpillar next argues that the pre-existing injury requirement of *Martin* has not been satisfied as to these two fraudulent misrepresentation claims. First, it contends that the plaintiff workers have not pled sufficient facts showing a pre-existing injury. Second, it contends that there could not be a pre-existing injury if, as the plaintiffs allege, these misrepresentations began the first day each started to work for Caterpillar, as implied by the plaintiffs' use of the "at all times material" language.

We disagree with the first point. Paragraph 64 alleges that the defendant's conduct caused an aggravation of "cadmium poisoning." We infer from this allegation that there was a measurable and harmful level of cadmium in the plaintiff's bodies before the alleged worsening of that condition by the defendant.

We agree with the second point. As to these two claims of fraudulent misrepresentation, the plaintiffs vaguely allege that they were made "[a]t all times material to this action," (complaint, ¶¶ 56 and 58) (brackets added), a fair reading of which would certainly include the first day each began work. If so, there could be no pre-existing injury that could have been aggravated by these misrepresentations, and the complaint would be controlled by *Barber*, not *Martin*.

■ We thus reject the plaintiffs' position that under *Martin* the aggravation of an injury can begin on the first day on the job. (Plaintiffs' opposition brief at p. 9.) This position misconstrues *Martin*, which was obviously based on some level of lead poisoning occurring before the fraudulent conduct; *Martin* emphasized that the employer was being held liable for the aggravation of a work-related injury, not the injury itself. It not only said this in so many words, *see* 530 Pa. at 17, 606 A.2d at 447, but almost immediately reiterated the same point by stating that "[t]here is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who actively mislead employees already suffering as the victims of workplace hazards...." *Id.* at 18, 606 A.2d at 448 (brackets added).

■ The second misrepresentation claim is also defective on the independent ground that the plaintiffs have not alleged reasonable reliance, an issue Caterpillar touched on when it argued in its reply brief that the plaintiffs had failed to allege that it had a "duty" to tell its employees about the unsafe levels of cadmium in the air or the test results showing those levels. In *Martin*, such reliance was shown because the employer was alleged to have a policy of testing its workers for lead exposure and informing them of the results. No comparable responsibility has been alleged about Caterpillar's testing of air levels of cadmium, either by way of a voluntary assumption of the responsibility or a legal obligation. In the absence of allegations showing reasonable reliance on Caterpillar's silence concerning the air levels of cadmium, the plaintiffs' claims under *Martin* based on failure to disclose the test data fails.

■ Caterpillar also attacks the third fraudulent misrepresentation claim, the one based on its alleged statements sometime in and after 1993 to the plaintiff workers that they were "healthy," despite its contrary knowledge based on the plaintiff workers' blood or urine levels of cadmium. It first attempts to distinguish *Martin* on its facts by pointing out that in *Martin* the employer had refused to divulge, and then falsified,

test results on the worker's blood level of lead. In the instant case, on the other hand, the employees do not charge that Caterpillar withheld or falsified the blood or urine tests that presumably led to its knowledge. In the defendant's view, the averments here are thus not the same as the "flagrant misconduct" displayed in *Martin* nor would the conduct alleged put the workers at the same "fundamental disadvantage" in discovering their injuries. (Defendant's supporting brief at p. 10).

We reject this argument. It depends on factual differences from *Martin* that are irrelevant to its holding. *Martin* generally approved of fraudulent misrepresentation claims and did not limit them to when employers refused to reveal the results of health-care tests. However, as noted below, these allegations lack the particularity required for pleading fraud under Fed.R.Civ.P. 9(b), and plaintiff will be required to provide greater detail.

Additionally, the defendant argues that the plaintiffs have failed to allege that they were prevented from taking their test results to another doctor. However, it is not automatically unreasonable for workers to rely on their employer's statement that they are healthy without seeking further advice.

■ Caterpillar has also attacked the third misrepresentation claim by arguing that the plaintiff workers could not justifiably rely on a statement that they were healthy when under the circumstances they must have been experiencing symptoms which must have occasioned the testing of their blood or urine (or both) for cadmium at the time the "healthy" comments were made.

We agree with the defendant that there is some information the plaintiffs have not put in the complaint about the circumstances leading up to Caterpillar's knowledge of the levels of cadmium in the workers' blood and urine and, specifically, about symptoms the plaintiff workers might have been suffering at that time. Based on the pleading requirements of Rule 9(b), they should be required to plead these details, including whether, in fact, testing occurred, why it occurred, who did the testing, and whether the test results were available to the plaintiff workers.

■ However, we hasten to reiterate that workers should be able to put some trust in their employer, so that even if the plaintiff workers allege that they did feel ill at this time and had access to blood and urine tests, they would not necessarily be precluded from showing reasonable reliance on their employer's representation, after blood and urine testing, that they were healthy. A resolution of that issue should await the precise allegations of an amended complaint.[1]

Finally, we address the plaintiffs' argument, citing *Pollard v. Lord Corp.*, 445 Pa.Super. 109, 664 A.2d 1032 (1995), *appeal granted*, 544 Pa. 20, 674 A.2d 664 (1996), that we should be leery of disposing of their claims on a motion to dismiss. In *Pollard*, the superior court held that a direct action against an employer for a disease resulting form occupational exposure to workplace chemicals should not have been dismissed at the pleading stage since it was unclear from the plaintiff's complaint whether the disease was compensable under the WCA. *Pollard* is distinguishable. In that case, the plaintiff was seeking compensation for the work-related injury itself, not an aggravation of the injury under *Martin*, as the plaintiffs do here. Additionally, the superior court only held that the complaint should not have been dismissed on the pleadings. It suggested that the case might be stayed while the plaintiff pursued an administrative remedy under the WCA, a process we are sure that the plaintiffs here are trying to avoid.[2]

---

**1.** The defendant also argues that the plaintiffs do not allege that they ever told Caterpillar that they were ill, and hence cannot rely on a defendant statement about their health that must therefore have been based on incomplete information. We conclude that this is not a necessary allegation.

We have also considered the cases the defendant has cited at pages 5 and 6 of its supporting brief to buttress its contention that *Martin* has been limited to its "unique facts." We have reviewed the cases and see no need to discuss them since all they do is distinguish *Martin*, not limit it to its "unique facts."

**2.** We have also considered the plaintiffs' argument under *Jackson Township Volunteer Fire Co. v. Workmen's Compensation Appeal Board*, 140 Pa.Commw. 620, 594 A.2d 826 (1991), and conclude that it does not assist the plaintiffs either.

---

---

**B.  The Particularity Requirement of Fed.R.Civ.P. 9(b) and the Reasonable Reliance Element of a Fraud Claim.**

Caterpillar also moves to dismiss plaintiffs' fraud claims for failure to plead the "circumstances" of the fraud with "particularity," as required by Fed.R.Civ.P. 9(b). The Third Circuit's interpretation of Rule 9(b) is as follows:

> [I]n applying Rule 9(b), focusing exclusively on its particularity language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules. [citations omitted] . . . . Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984) (brackets added) (internal quotation marks omitted). With regard to allegations of date, place and time, the court stated the following:

> It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Id.*

We do not view the latter language as excusing any requirement of date, place and time, as the plaintiffs here urge. This comment must be taken in the context of *Seville*, a case dealing with a complex fraudulent scheme involving the sale of some 700 pieces of industrial equipment. In this case, on the other hand, we have a straightforward claim of fraud in which the plaintiffs should be able to provide sufficient detail as to what was said to each of them, when it was said, and by whom it was said. Other courts have imposed such requirements under Rule 9(b) in appropriate circumstances, *see City of Harrisburg v. Bradford Trust Co.*, 621 F.Supp. 463, 475 (M.D.Pa.1985), and we will do so here.

Under this standard, all three claims of fraudulent misrepresentation lack particularity. However, we only have to address the defects in the third claim since we have already decided that the first two claims fail on the merits because they seek recovery for the original work-related injury, rather than an aggravation of that injury.[3]

The third claim is defective in two ways. First, it is not specific as to when the misrepresentations were made, averring only that they were made "beginning in 1993." Second, the claim is defective because it does not specify what agents or employees of Caterpillar made the misrepresentations, their job with the defendant, which plaintiffs the communications were made to, and the form of the communication; i.e., whether written or oral.

As we also noted in the foregoing section, the plaintiffs should also set forth the circumstances leading up to Caterpillar's knowledge of the levels of cadmium in the workers' blood and urine; specifically, the symptoms the plaintiff workers might have been suffering at that time; whether, in fact, testing occurred; why it occurred; who did the testing; and whether the test results were available to the plaintiff workers.

These specific allegations are necessary to allow the defendant to frame a responsive answer and to safeguard it against vague charges of fraud.

**C.  Conclusion.**

We have allowed amendment of the third claim of fraudulent misrepresentation, but, depending on the allegations of any amended complaint that may be filed, we do not foreclose another motion to dismiss or another motion for a particular statement.

We will issue an appropriate order.

---

**3.**  The plaintiffs have defended the "at all times material" time frame used in these claims. We might have allowed amendment if the plaintiff had offered to amend this crucial allegation.

## ORDER

AND NOW, this 13th day of March, 1997, it is ordered that:

1. The defendant, Caterpillar's, motion to dismiss (doc. no. 20) is granted in part and denied in part.

2. The motion is granted as to the misrepresentation claims based on allegations that Caterpillar falsely represented that the workplace was safe and that it withheld data showing dangerous air levels of cadmium.

3. The motion is denied as to the misrepresentation claim based on allegations that Caterpillar falsely told the plaintiff workers that they were healthy.

4. The defendant, Caterpillar's, motion for a particular statement (doc. no. 20) is granted as to the misrepresentation claim based on allegations that Caterpillar falsely told the plaintiff workers that they were healthy.

5. The plaintiffs shall file an amended complaint alleging as to that claim: (1) when the misrepresentations were made or the best approximation of the dates; (2) what agents or employees of Caterpillar made the misrepresentations and their job with the defendant; (3) which plaintiffs the communications were made to; (4) the form of the communication (whether written or oral); and the circumstances surrounding Caterpillar's knowledge of the workers' blood or urine levels of cadmium, including whether, in fact, testing occurred, why it occurred, who did the testing, and whether the test results were available to the plaintiff workers.

6. The plaintiffs shall have twenty days from the date of this order to file the amended complaint. If they fail to do so, this action will be dismissed as against defendant Caterpillar.