**UNITED STATES of America,
Plaintiff,**

v.

**ALLEGHENY LUDLUM
CORPORATION,
Defendant.**

**No. Civ.A. 95–990.**

United States District Court,
W.D. Pennsylvania.

Sept. 28, 2000.

Robert L. Eberhardt, United States Attorney's Office, Pittsburgh, PA, Nancy Flickinger, United States Department of Justice, Environment & Natural Resources Division, Washington, DC, Lois J. Schiffer, United States Department of Justice, Environmental Defense Section, Washington, DC, Michael Wagner, United States Environmental, Protection Agen-

cy—New England, Boston, MA, Lori G. Kier, Kerry Nelson, United States Environmental, Protection Agency, Region III, Philadelphia, PA, for United States of America, plaintiff.

Walter A. Bunt, Jr., Thomas J. Smith, John E. Beard, Kirkpatrick & Lockhart, Pittsburgh, PA, for Allegheny Ludlum Corporation, defendant.

## MEMORANDUM ORDER

CINDRICH, District Judge.

### I. *Background*

This is an action by the United States to remedy thousands of alleged violations of the Clean Water Act, 33 U.S.C. § 1251 et seq. Defendant Allegheny Ludlum Corporation ("A–L") owns and operates five steel mills and finishing plants. A–L's Brackenridge and West Leechburg plants were authorized to discharge wastewater directly to local rivers, the Allegheny and the Kiskiminetas. The Vandergrift plant discharged its wastewater to the Kiski Valley Water Pollution Control Authority ("Authority"), which operates a publicly owned wastewater treatment plant, until February 1998. This relationship included an agreement that, like the highly detailed statutory and regulatory scheme discussed by the parties in their papers, also established obligations for the wastewater A–L sent to the Authority.

Among a number of pending motions are three for partial summary judgment on liability by the US, and one motion for summary judgment on liability by A–L. We also take this opportunity, given the circumstances of this case and the state of the court's docket, to summarily resolve other matters and place the case on track for ultimate resolution.

The Clean Water Act ("Act") prohibits the discharge of any pollutants into the waters of the United States except as expressly authorized under the Act. 33 U.S.C. § 1311(a). The Act includes the National Pollution Discharge Elimination System to regulate pollution. The NPDES authorizes the United States Environmental Protection Agency to issue permits that set the standards for emissions of pollutants. 33 U.S.C. § 1342(a). States may participate in pollution regulation under the Act. 33 U.S.C. § 1342(b). *See generally, PIRG v. Hercules, Inc.,* 50 F.3d 1239, 1242 (3d Cir.1995); *PIRG of NJ v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 68 (3d Cir.1990).

■ Violations of the Act are determined according to a standard of strict liability. The U.S. must show that defendant is a person who discharged a pollutant into navigable waters outside the terms of its permit. 33 U.S.C. § 1311. Violations can take the form not only of actual pollution, but in improperly monitoring and reporting the discharge of pollutants.

### II. *Stipulation of Withdrawal by Plaintiff and Liability by Defendant*

The parties have filed a stipulation in which the U.S. has withdrawn some of its claims and A–L has admitted liability to certain claims. Doc. No. 215. These admissions and withdrawals will be applied in the future course of the litigation.

### III. *US First Motion for Partial Summary Judgment—Reported Violations*

The U.S. seeks summary judgment for violations that A–L reported through its mandatory monitoring of pollutants, and recorded on what are known as discharge monitoring reports. Liability can be found by comparing A–L's reports about its discharges of toxic metals, oil, acid, and caustic wastewater with the levels allowed by its permits and agreements. The U.S. contends that these reports, containing measurement data required by the Act, constitute admissions of liability.

Specifically, the U.S. claims that these DMRs show 465 days of permit violations by the Brackenridge and West Leechburg plants involving the discharge of toxic met-

als, and pH levels too high or low. Similarly, the Vandergrift plant exceeded the amount of metals it discharged to the Authority on 557 days. The U.S. finally alleges that A–L plants allowed the release of oil, foam, and discoloration contrary to their permits.

In response, A–L has admitted liability for certain claims, as noted above. Further examination of those claims thus can await the penalty stage of the case.

■ A–L then advances a number of defenses which it argues preclude summary judgment. First, A–L contends that the "upset" defense is applicable to a number of the violations alleged by the US. An upset is defined as unintentional, temporary failure to comply with a permit because of conditions beyond the permit holder's control. 40 C.F.R. § 122.41(n)(1). The U.S. responds that this defense is unavailable as a matter of law because language authorizing it was not part of A–L's permits. The court agrees. The Act allows a state to issue stricter pollution standards than those promulgated by the US. 33 U.S.C. § 1370; 40 C.F.R. § 123.25. These standards then become enforceable by the US. A–L's invocation of the upset defense thus is no shield to the violations it cites.

A–L's argument based on the "bypass" defense is similarly flawed. A bypass condition is also a legitimate excuse for noncompliance, and occurs when there is an intentional diversion of pollutants to prevent death, injury, or severe property damage. 40 C.F.R. § 122.41(m). A–L's agreement with the Authority did not include a provision on bypasses. Thus, A–L cannot claim the bypass defense on its discharges from Vandergrift to the Authority's wastewater treatment plant. As for the other claims against which A–L asserts the bypass defense, there are questions of fact about feasible alternatives which preclude summary judgment. Accordingly, those claims will be reserved for trial.

■ As another defense, A–L contends that violations based on its exceedances of zinc should be excused because improper handling of samples in its own laboratory led to reports of higher zinc discharges than allowed. A–L has not demonstrated, however, that this is a defense to liability accepted in this circuit. Given the Act's scheme of strict liability, and the importance placed on self-monitoring and self-reporting, we are unlikely to adopt a new defense in this litigation, especially since the Act can be interpreted as creating an obligation to insure that the self-monitoring of pollutants is accurate, assigning the risk of inaccuracy to the company.

There are a number of U.S. claims, involving oil sheens, discoloration, foam, and pH levels not easily characterized, that A–L challenges as being unsuited for summary judgment. A–L contends that it did not cause certain discharges, that some discharges did not reach navigable waters, that some discoloration was not harmful, and that its discharges were on a par with the influent water as to certain characteristics ("no net add" defense). Defendant's Response in Opposition to U.S. Motions, Doc. No. 136, at 36–44. Fact disputes exist as to these claims, and they will be reserved for trial.

■ A–L also argues that certain claims are barred by agreements between it and the Authority and the PADEP. A–L asserts that res judicata principles foreclose action by the U.S. over the same problems. The court disagrees. The U.S. has independent authority under the Act to pursue its own enforcement actions regardless of the contracts with, or enforcement by, state and local officials. 33 U.S.C. § 1342. We therefore find that the terms of, and conduct pursuant to, agreements between A–L, the Authority, and PADEP are not defenses to liability as argued by A–L.

### IV. *US Second Motion for Partial Summary Judgment on Liability–Unreported Violations*

The government's first motion for summary judgment is based on documents it

obtained in the normal course of regulation. The U.S. also moves for summary judgment based on documents obtained not through the normal course of regulation, but rather through discovery in this case. These documents consist of operator logs from A–L's own wastewater treatment plants; a log of daily sampling of pH levels at the West Leechburg plant from February 1990 to August 1994, collected by the aptly named A–L employee Bryne Steel; and charts of pH levels from automatic pH monitoring equipment at West Leechburg and Brackenridge. The claims allege both that A–L should have provided these documents to the US, and that the documents disclose hundreds of unlawful discharges. Thus, the second summary judgment motion is based on about 2,000 reporting and substantive violations.

■ A–L opposes summary judgment on these unreported violations. It argues that the quality, reliability, and relevance of this information is conclusively different than the DMRs it is obligated to provide under the regulations. It then goes on to describe these evidentiary distinctions in numbing detail. These questions about just what the wastewater treatment operators saw, how they recorded it, the testing methods used to record pH levels, and the like, inevitably create issues of fact about the evidence on which the government relies in seeking summary judgment. Even the issue of whether failure to report alone is a violation depends on the form and content of the evidence itself. On the other hand, we do not find that only testing information that rigidly adheres to 40 C.F.R. § 136 can form the basis for an obligation to report, or conclusively prove a substantive violation. If information is probative on the issue of discharge of pollutants, it is potentially admissible for the purpose of proving both a failure to report and a substantive breach of regulatory obligations.

■ In addition to the fact disputes, the legal ground for the government's motion is not wholly persuasive. The cases it cites in support of summary judgment for claims based on evidence other than DMRs are not like this one: none are from our circuit; three are criminal cases; all involved trial, not summary judgment; and all involved the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., on the issue of the type of evidence that can properly confer liability. *United States v. Sinskey,* 119 F.3d 712 (8th Cir.1997); *United States v. Self,* 2 F.3d 1071 (10th Cir.1993); *United States v. Baytank,* 934 F.2d 599 (5th Cir.1991); *United States v. WCI,* 72 F.Supp.2d 810 (N.D.Ohio 1999). Unlike the question of whether DMRs constitute admissions of illegal conduct, then, we have no firm legal basis to reach the same conclusion about evidence on the non-DMR claims. Accordingly, we will consider all such evidence as we do any other evidence at trial.

## V. US Third Motion for Partial Summary Judgment on Liability—Interference

■ The government's third motion for partial summary judgment is based on violations allegedly caused by A–L's Vandergrift plant between September 1994 and February 1998 when it was discharging wastewater to the Authority. The U.S. claims that A–L's discharges contained such high concentrations and volumes of acid that, by natural and chemical processes, sludge formed consistently on the waters the Authority was attempting to treat. Users of public water treatment facilities are prohibited from "interfering" with its operations by, among other things, sending it substances that "inhibit or disrupt" wastewater treatment, or cause the facility to violate its own NPDES permits. 40 C.F.R. §§ 403.5(a)(1), 403.3(i). The U.S. has fact and expert testimony, photographs, and evidence about the appearance and disappearance of a sludge problem at the Authority corresponding precisely to the beginning and end of acid discharges from Vandergrift. It contends this evidence is sufficient for the court to render

judgment in its favor on 1,951 violations of this type.

A–L challenges the government's motion by arguing that it did not cause any interference with the Authority's operations, that there is no proof that the Authority violated its NPDES permit because of A–L's discharges, and that, if an interference problem did exist, it was not aware of such problem. A–L supports its opposition with expert statistical analysis contesting the causal link between concentrations of nitrates and nitrates entering the Authority, and sludge formation. In addition, A–L has the results of investigations by two laboratories and one other expert that cast doubt on the government's conclusion that the sludge was formed by denitrification, the government's theory. A–L also refers to evidence purporting to show that sludge buildup at the Authority was a problem at times other than 1994 to 1998.

The government's reply is substantially based on supporting or challenging the credibility of certain witnesses. This is a sufficient signal to demonstrate that, along with A–L's contentions and evidentiary submissions, these claims are not suited to summary judgment. One issue raised in the briefing we will finally resolve, however, is to find that the Authority is not an indispensable party to this action.

## VI. A–L's Motion for Summary Judgment

The court's decision on the government's motions for summary judgment effectively determines A–L's dispositive motion on the same issues

### A. pH Violations

A–L seeks summary judgment on Count 138. The Company argues that it cannot be liable for failing to report data that was obtained using methods other than those approved by the EPA at 40 C.F.R. § 136. We disagree, as set forth above. We do not find that only methods consistent with 40 C.F.R. § 136 may produce evidence sufficient to support a claim of noncompli-

ance. Because evidence is not in its highest or regulatorily approved form does not completely destroy its probative value. The flaws A–L cites go to weight, not admissibility. Moreover, this is not a new reporting requirement that implicates A–L's due process rights.

### B. Interference Claim and Oil Sheens

A–L seeks summary judgment on the claim that it interfered with the operations of the Kiski Valley Water Pollution Control Authority. It argues that it is entitled to the regulatory defense to interference set forth at 40 C.F.R. § 403.5; that the Authority is an indispensable party to this action; and that EPA itself caused the interference by delaying the issuance of a permit. As set forth above, there are disputes of fact that preclude summary judgment on this issue. The same conclusion applies to claims involving oil sheens and water discolorations.

### C. Zinc Exceedances and Upset and Bypass Events

A–L seeks summary judgment on the claims involving its exceedances of limitations on the zinc it could discharge. It argues that the values it reported were reached through errors in its laboratory which contaminated its water samples and overstated the amount of zinc. A–L likewise asserts that the claims involving exceedances were the result of upsets and bypasses, affirmative defenses to Clean Water Act violations. 40 C.F.R. §§ 122.41(n)(1) (upset); 122.41(m)(1) (bypass). As we state above, we will grant the U.S. motion for summary judgment on this issue.

### VII. Conclusion

1. Plaintiff's Motion for Partial Summary Judgment as to Liability on Reported Violations, Doc. No. 116, is GRANTED IN PART and DENIED IN PART as set forth above. That is, summary judgment is granted plaintiff to the extent triable

issues of fact were not found, and defendant's defenses were denied.

2. Plaintiff's Motion for Partial Summary Judgment as to Liability on Unreported Violations, Doc. No. 122, is DENIED.

3. Plaintiff's Motion for Partial Summary Judgment on Interference Claims, Doc. No. 127, is DENIED.

4. Defendant's Motion for Summary Judgment, Doc. No. 104, is DENIED.

5. Defendant's Motion to Dismiss; Response in Opposition to the Motions of the United States and Cross–Motions for Summary Judgment, Doc. No. 136, is DENIED in its entirety.

6. Defendant's Motion to Strike the Declaration of Lee Okster, Doc. No. 134, is DENIED.

7. Defendant's Motion to Strike the Declaration of Gary Amendola, Doc. No. 135, is DENIED.

8. Plaintiff's Motion to Strike Portions of the Affidavits of Deborah Calderazzo, Doc. No. 159, is DENIED.

9. Plaintiff's Motion to Strike Portions of the Affidavits of Deborah Calderazzo, Doc. No. 160, is DENIED.

10. Defendant's Motion to Strike Second Amendola Declaration, Doc. No. 161, is DENIED.

11. Defendant's Motion to Strike Okster's Third Declaration, Doc. No. 162, is DENIED.

12. Plaintiff's Motion for Expedited In Camera Review of Redacted Materials in the Eckstein Documents, Doc. No. 129, is GRANTED IN PART and DENIED IN PART. The court has reviewed the redacted material. The motion is denied except to the extent stated below.

The following redactions contain routine factual information, such as transmittal memos repeating facts found in attached documents, and shall be released to plaintiff. The document designations are taken from defendant's privilege log for Eckstein documents.

a. Exhibit 1, Index, all but No. 10, Bates No. 2–3.

b. Exhibit 2, Doc. 10, Bates No. 428

c. Exhibit 2, Doc. 14, Bates No. 493

d. Exhibit 2, Doc. 3, Bates No. 557, 559

e. Exhibit 2, Doc. 9, Bates No. 598

f. Exhibit 2, Doc. 5, Bates No. 744

g. Exhibit 2, Doc. 8, Bates No. 829

The following documents may implicate the crime-fraud exception to the attorney-client and work product privileges. The court cannot finally resolve this question, however, without knowing the context in which this information was gathered and recorded. Thus, defendant will not now be ordered to produce this information, but the parties should be prepared to suggest a procedure for resolving these issues at the hearing set below.

h. Exhibit 1, Doc. No. 12, Bates No. 61

i. Exhibit 1, Doc. No. 21, Bates No. 345

j. Exhibit 1, Doc. No. 21, Bates No. 351

k. Exhibit 1, Doc. No. 21, Bates No. 362

l. Exhibit 1, Doc. No. 21, Bates No. 364

m. Exhibit 1, Doc. No. 21, Bates No. 379

n. Exhibit 1, Doc. No. 21, Bates No. 380

13. The court will hear argument on motions in limine, motions to pre-qualify, the motion to bifurcate, and any other matters affecting remaining pretrial preparation and trial procedure **from 9:30 am to 12:30 pm on December 1, 2000.**

As a final remark, the court notes that this is a case well-suited for resolution short of trial. I urge the parties to make serious efforts toward that end promptly. The court is prepared to assist the parties with such efforts to the degree possible.